[Civ. No. 19570. Fourth Dist., Div. Two. Dec. 1, 1978.]

UNEEDUS, Plaintiff and Appellant, v.
CALIFORNIA SHOPPERS, INC., et al., Defendants and Respondents.

934

**COUNSEL**

W. Mike McCray for Plaintiff and Appellant.

R. Michael Harding, Haight, Dickson, Brown & Bonesteel and Roy G. Weatherup for Defendants and Respondents.

**OPINION**

**McDANIEL, J.—**

### STATEMENT OF FACTS

Uneedus (plaintiff), a California corporation, publishes a weekly advertising newspaper known as the "Hi-Liter." First published in late August 1974, by early March 1975, the Hi-Liter was a profitable enterprise operating a quality advertising service in five communities in

Riverside County. These communities were characterized at trial as "not capable of supporting more than one advertising paper."

In early March 1975, California Shoppers, Inc., a California corporation and various individuals (defendant) began distribution of a similar advertising newspaper called the "California Shopper" in the communities where plaintiff distributed the Hi-Liter. Overzealous in its desire to compete with plaintiff, defendant offered, without charge, large quantities of display ad space and sold such space below actual cost.

Plaintiff sought damages and injunctive relief against defendant alleging it had violated various sections of the California Unfair Practices Act. (Bus. & Prof. Code, §§ 17000-17208.) Specifically, plaintiff contended defendant's acts violated section 17043 of that act,[1] and that it had engaged in such acts with the intent of injuring plaintiff and competition.[2] Defendant filed a cross-complaint alleging that plaintiff had engaged in similar activities.

At the conclusion of a nonjury trial, plaintiff was awarded judgment for $25,000 in general damages and $10,000 in attorney's fees. Additionally, the court ruled against defendant on its cross-complaint. However, the court denied plaintiff's request for treble damages claimed under section 17082 which reads in pertinent part: "In any action under this chapter, it is not necessary to allege or prove actual damages or the threat thereof, or actual injury or the threat thereof, to the plaintiff. *But, in addition to injunctive relief, any plaintiff in any such action shall be entitled to recover three times the amount of the actual damages, if any, sustained by the plaintiff, as well as three times the actual damages, if any, sustained by any person who has assigned to the plaintiff his claim for damages resulting from a violation of this chapter.*" (Italics added.)

The court's rationale for denying treble damages was that "[t]he Court further finds the acts of defendants were not done with malice or

---

[1] All statutory references hereafter will be to the Business and Professions Code unless otherwise specified.

Section 17043 reads as follows: "It is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition."

[2] Section 17071 reads as follows: "In all actions brought under this chapter proof of one or more acts of selling or giving away any article or product below cost or at discriminatory prices, together with proof of the injurious effect of such acts, is presumptive evidence of the purpose or intent to injure competitors or destroy competition."

oppression towards plaintiff nor were they of such magnitude to warrant the imposition of treble damages." (Finding of fact No. 23.)

 Plaintiff appeals from the court's ruling claiming that the failure to award treble damages was error. In this case of first impression, it is our view that the trial court erred in refusing to award plaintiff treble damages. We hold that a private plaintiff who has proved actual damages under the California Unfair Practices Act is entitled to mandatory treble damages pursuant to section 17082. Hence, the issue of whether defendant acted maliciously or whether its acts "were . . . of such magnitude to warrant the imposition of treble damages" is not present in the case.

## Issue and Discussion

Fundamentally, plaintiff contends that the treble damage provision of section 17082 mandating that a plaintiff "shall be entitled to recover three times the amount of the actual damages, if any, sustained by [him]" is analogous to section 4 of the Clayton Act, a part of the federal antitrust laws. That statute reads: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, *and shall recover threefold the damages by him sustained,* and the cost of suit, including a reasonable attorney's fee." (15 U.S.C. § 15 (1973), also referred to as § 4 of the Clayton Act, italics added.)

Because a private plaintiff's general damages are automatically trebled under the federal provision (*Locklin* v. *Day-Glo Color Corporation* (7th Cir. 1970) 429 F.2d 873, 878, cert. den., 400 U.S. 1020 [27 L.Ed.2d 632, 91 S.Ct. 582]; *Kline* v. *Coldwell, Banker & Co.,* (9th Cir. 1974) 508 F.2d 226, 235, cert. den., 421 U.S. 963 [44 L.Ed.2d 449, 95 S.Ct. 1950]), plaintiff urges that the treble damage portion of section 17082 should similarly be automatic and beyond the scope of trial court discretion.

Defendant, alternatively, advances a number of arguments supporting its position "that the award of treble damage is within the sound discretion of the court[.]" It first contends that the Unfair Practices Act is not an antitrust law and therefore federal decisions interpreting the Sherman[3] and Clayton[4] Acts cannot be used as a guide in interpreting

[3] 15 United States Code section 1 et seq.

[4] 15 United States Code sections 12, 13, 14-21, 22-27 (1973).

section 17082. Defendant next argues that treble' damages are discretionary under section 16750[5] (Cartwright Act) and hence should similarly be discretionary under section 17082. Additionally, defendant argues, because it is a newspaper, that to award plaintiff treble damages would unconstitutionally infringe upon defendant's First Amendment rights. Finally, defendant opines that the word "entitled" in section 17082 must be reasonably interpreted and does not ordinarily signify "an absolute and unqualified right" to treble damages.

We shall use these contentions as a vehicle for a discussion and resolution of the issue presented by this appeal.

I

Defendant concedes that the Sherman Act is an antitrust law and "is similar to California's Cartwright Act." It argues, however, that "[t]he California Unfair Practices Act is similar to the Robinson-Patman Act, and is [therefore] *not* an antitrust law." Thus, according to the defendant, the federal cases relied upon by plaintiff in support of its mandatory treble damage argument are inapposite.

Defendant is correct in its observation that the Unfair Practices Act closely parallels the Robinson-Patman Act. Both proscribe three basic types of business practices: (1) price discrimination in its various forms; (2) sales below cost, or as referred to in the Robinson-Patman Act, sales at unreasonably low prices; and (3) the granting of rebates and discounts not made available to all buyers on like terms and conditions. (See, e.g., Cupp, *The Unfair Practices Act* (1936) 10 So.Cal.L.Rev. 18, 21.) "Price discrimination" means no more than price differentiation or the charging of different prices to different customers for goods of like grade and quality. (*Continental Baking Co.* v. *Old Homestead Bread Co.* (10th Cir.

---

[5]Section 16750 reads in relevant part: "(a) Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, may sue therefor in any court having jurisdiction in the county where the defendant resides or is found, or any agent resides or is found, or where service may be obtained, without respect to the amount in controversy, and *to recover three times the damages sustained by him,* and shall be awarded a reasonable attorneys fee together with the costs of the suit." (Italics added.)

The Cartwright Act encompasses sections 16600-16804.

1973) 476 F.2d 97, 103, cert. den., 414 U.S. 975 [38 L.Ed.2d 218, 94 S.Ct. 290].[6])

The only significant difference between the Unfair Practices Act and the Robinson-Patman Act is that the state statute proscribes price discrimination between geographic localities only,[7] but fails to proscribe such discrimination between individual purchasers. The Robinson-Patman Act, however, proscribes both types of price discrimination. (*Harris* v. *Capitol Records etc. Corp., supra,* 64 Cal.2d 454, 459-460; see 15 U.S.C. § 13; cf. 15 U.S.C. § 13a (1973).)

Defendant bases its argument that both acts are not antitrust laws on the United States Supreme Court's decision in *Nashville Milk Co.* v.

---

[6]15 United States Code section 13 (§ 1 of the Robinson-Patman Act which amended § 2 of the Clayton Act) consists of six subdivisions, (a) through (f). Subdivision (a) prohibits direct and indirect discrimination in price having specified effects on competition. Certain affirmative defenses are also permitted, notably cost justification of price differences. (See, Hills, Antitrust Adviser (2d ed. 1978) § 4.2, p. 293.) Section 13 reads in part as follows:

"(a) It shall be unlawful for any person engaged in commerce in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: *Provided,* That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: . . . *And provided further,* That nothing herein contained shall prevent persons engaged in selling goods, wares, or merchandise in commerce from selecting their own customers in bona fide transactions and not in restraint of trade: *And provided further,* That nothing herein contained shall prevent price changes from time to time where in response to changing conditions affecting the market for or the marketability of the goods concerned, such as but not limited to actual or imminent deterioration of perishable goods, obsolescence of seasonal goods, distress sales under court process, or sales in good faith in discontinuance of business in the goods concerned."

[7]Section 17040 addresses the concept of locality discrimination:

"It is unlawful for any person engaged in the production, manufacture, distribution or sale of any article or product of general use or consumption, with intent to destroy the competition of any regular established dealer in such article or product, or to prevent the competition of any person who in good faith, intends and attempts to become such dealer, to create locality discriminations.

"Nothing in this section prohibits the meeting in good faith of a competitive price."

The "smallest geographical unit [section 17040] envisages is the individual store or outlet, not the individual purchaser regardless of location." (*Harris* v. *Capitol Records etc. Corp.,* 64 Cal.2d 454, 460 [50 Cal.Rptr. 539, 413 P.2d 139].)

*Carnation Co.,* 355 U.S. 373 [2 L.Ed.2d 340, 78 S.Ct. 352], rehearing denied 355 U.S. 967 [2 L.Ed.2d 542, 78 S.Ct. 530].[8] Its analysis of *Nashville Milk Co.* is faulty.

In that case, the plaintiff argued that it had been injured by a defendant's act of selling at unreasonably low prices in violation of *section 3* of the Robinson-Patman Act. (15 U.S.C. § 13a.[9]) The plaintiff sought treble damages and injunctive relief under 15 United States Code sections 15 and 26.[10] (§§ 4 and 16 of the Clayton Act.)

The Supreme Court held the plaintiff's "private cause of action [did] not lie for practices forbidden *only* by § 3 . . . ." (*Nashville Milk Co.* v. *Carnation Co., supra,* 355 U.S. 373, 382 [2 L.Ed.2d 340, 347], italics added.) The court technically reasoned that section 3 of the Robinson-Patman Act did not amend the Clayton Act and "[f]urther, § *3 contains only penal sanctions for violation of its provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute.* [Citations.]" (*Id.,* at p. 377 [2 L.Ed.2d at p. 344], italics added.) Hence, the Supreme Court held the enforcement of *section 3* was exclusively within the purview of public

[8]Before the United States Supreme Court's decision in *Nashville Milk Co.* a conflict existed in the federal circuits concerning whether section 3 of the Robinson-Patman Act (15 U.S.C. § 13a) was an antitrust law for purposes of recovering treble damages. The Third Circuit viewed section 3 as an antitrust law. (See, e.g., *Dean Oil Company* v. *American Oil Company,* (D.C.N.J. 1956) 147 F.Supp. 414, affd. *per curiam* (3d Cir.) 254 F.2d 816, cert. den. 358 U.S. 835 [3 L.Ed.2d 72, 79 S.Ct. 58].) The Seventh Circuit viewed section 3 as not within the treble damage ambit. (See, e.g., *Mackey* v. *Sears Roebuck & Co.* (7th Cir. 1956) 237 F.2d 869.)

[9]Section 13a (§ 3 of the Robinson-Patman Act) provides:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to be a party to, or assist in, any transaction of sale, or contract to sell, which discriminates to his knowledge against competitors of the purchaser, in that, any discount, rebate, allowance, or advertising service charge is granted to the purchaser over and above any discount, rebate, allowance, or advertising service charge available at the time of such transaction to said competitors in respect of a sale of goods of like grade, quality, and quantity; to sell, or contract to sell, goods in any part of the United States at prices lower than those exacted by said person elsewhere in the United States for the purpose of destroying competition, or eliminating a competitor in such part of the United States; or, to sell, or contract to sell, goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor."

"*Any person violating any of the provisions of this section, shall, upon conviction thereof, be fined not more than $5,000 or imprisoned not more than one year, or both.*" (15 U.S.C. § 13a; italics added.

[10]15 United States Code section 26 (§ 16 of the Clayton Act) grants a private cause of action for injunctive relief "against threatened loss or damage by a violation of the antitrust laws."

authority, and treble damages were not recoverable "except to the extent that violation of any of its provisions *also constituted a violation of* § *2 of the Clayton Act* [15 U.S.C. § 13], *and as such were subject to private redress under* §§ *4 and 16 of that Act.*" (*Id.,* at p. 379 [2 L.Ed.2d at p. 345], italics added.)

The critical point the Supreme Court made in *Nashville Milk Co.* which defendant here has ignored is that section 2 of the Clayton Act was amended by the first section of the Robinson-Patman Act of June 19, 1936. (15 U.S.C. § 13, see fn. 6 *ante.*[11]) Therefore, "the Robinson-Patman Act [15 U.S.C. § 13] [is an] 'antitrust [law]' within § 4 [of the Clayton Act] and treble damage suits are . . . authorized by any person 'injured in his business or property' as a result of a violation of [that] provision." (Hills, Antitrust Adviser (2d ed. 1978) § 4.28, p. 353.) ▮ In other words, there are certain kinds of violations contemplated by the Robinson-Patman Act which, by reference to the Clayton Act, are subject to recovery of treble damages at the suit of a private plaintiff quite without regard to any proof of malice or any other condition precedent. Those violations are precisely the kind which occurred here under the California Unfair Practices Act.

Moreover, we note defendant appears to argue "that antitrust remedies [including treble damages] are based on public policy considerations" but Unfair Practices Act actions are not. The policy behind that act, according to defendant, is to protect individual competitors but not the public and "[t]hus, the extraordinary remedy of treble damages" is inappropriate.

▮ Defendant, however, is incorrect concerning the policy underlying the Unfair Practices Act. The California Supreme Court in upholding that act's constitutionality articulated its purpose as follows: "This act represents an attempt on the part of the legislature to regulate business as a whole by prohibiting practices which the legislature has determined constitute unfair trade practices. *Its stated purpose (sec. 13) is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage free, open and fair competition.*" (*Wholesale T. Dealers* v.

---

[11]For purposes of clarity, it is important to understand that 15 United States Code section 13, and 15 United States Code section 13a, are two separate and independent sections of the Robinson-Patman Act. As noted by the United States Supreme Court in *Nashville Milk Co.,* section 13a includes its own independent penalty provision exclusive of 15 United States Code section 15, the treble damage provision. (See fn. 9 *ante.*) The United States Supreme Court in *Nashville Milk Co.* addressed section 13a only and not section 13.

*National etc. Co.,* 11 Cal.2d 634, 643 [82 P.2d 3, 118 A.L.R. 486], italics added.[12]) Thus, the Unfair Practices Act is based on a strong public policy of fostering competition, and *does not direct itself solely* to the concerns of individual competitors.

Likewise, the public policy of "free, open and fair competition" underlies the concept of mandatory treble damages: "[T]he purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws. *The plaintiff who reaps the reward of treble damages may be no less morally reprehensible than the defendant, but the law encourages his suit to further the overriding public policy in favor of competition.* A more fastidious regard for the relative moral worth of the parties would only result in seriously undermining the usefulness of the private action as a bulwark of antitrust enforcement. And permitting the plaintiff to recover a windfall gain does not encourage continued violations by those in his position since they remain fully subject to civil and criminal penalties for their own illegal conduct. [Citation.]" (*Perma Mufflers* v. *Int'l. Parts Corp.,* 392 U.S. 134, 139 [20 L.Ed.2d 982, 990, 88 S.Ct. 1981], italics added; see also *Antitrust Symposium: The Effectiveness of the Private Treble Damages Action as an Antitrust Enforcement Mechanism* (1976) 8 Sw.U.L.Rev. 505.) Thus, it can fairly be observed, based upon the foregoing, that the Unfair Practices Act has as one of its purposes an antitrust law objective.

## II

■ We next turn to defendant's contention concerning the mandatory nature of treble damages under the antitrust laws. ■ Here again federal decisions are persuasive in construing California antitrust laws: "The Cartwright Act is patterned upon the federal Sherman Antitrust Act and both derive their basic provisions from the common law policy against restraint of trade; thus cases decided under the latter act are applicable as an aid to decision in interpreting the former. [Citations.]" (*Saxer* v. *Philip Morris, Inc.,* 54 Cal.App.3d 7, 19 [126 Cal.Rptr. 327].) ■ *Because treble damages are mandatory under federal antitrust laws where a private plaintiff brings a Robinson-Patman Act action*

[12]Similarly, section 17001 articulates the purpose of the Unfair Practices Act: "The Legislature declares that the purpose of this chapter is to safeguard the public against the *creation or perpetuation of monopolies and to foster and encourage competition,* by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented." (Italics added.)

*pursuant to 15 United States Code section 13,* it is our view that section 17082 should similarly be interpreted as *requiring* treble damages in actions brought pursuant to the Unfair Practices Act without regard to malice or any other judicially imposed qualifying condition.

Defendant's additional arguments against interpreting section 17082 as providing for mandatory treble damages are also without merit. As previously noted, defendant contends that "[because] the Award of Treble Damages Is Not Mandatory Under Section 16750 [Cartwright Act] . . . It Should Not Be Held Mandatory Under Section 17082." Defendant, however, fails to cite any cases supporting that proposition.

We note that a dearth of authority exists in California interpreting the Cartwright Act as well as the Unfair Practices Act, because few actions have been brought and even fewer appealed under either section. Since 1907 only about 20 major appellate decisions concerning the Cartwright Act have been litigated. (Fellmeth, *Antitrust Enforcement by Local Prosecutors: Impediments and Prospects* (1978) 14 Cal. Western L.Rev. 1, 15, fn. 59.)

■ Our research has failed to locate a decision deciding whether section 16750's treble damage provision is mandatory or discretionary. Because, however, the Cartwright Act is one of our state antitrust laws and analogous to the federal Sherman Act as pointed out by defendants in their brief, we opine that section 16750's treble damage provision is also mandatory. As previously noted, cases decided under the Sherman Act are applicable in interpreting the Cartwright Act. (*Saxer* v. *Philip Morris, Inc., supra,* 54 Cal.App.3d 7, 19.)

Regardless, because defendant cites no authority in support of its interpretation of section 16750 and also because the issue of its interpretation is not presently before us, we decline to consider it and hence decline to consider any argument by way of analogy deriving from such interpretation.

### III

Defendant additionally contends "[a]n Award of Treble Damages in This Case Would Be Unconstitutional." It relies upon the United States Supreme Court's decision in *Gertz* v. *Robert Welch, Inc.,* 418 U.S. 323 [41 L.Ed.2d 789, 94 S.Ct. 2997] as support for its theory. Defendant's reliance on that decision, however, is misplaced. We need only note that *Gertz*

addressed the issue of awarding exemplary damages against a media defendant when that defendant engaged in defamatory speech. In the case before us treble damages are appropriate, not because of the type of speech engaged in, but because of unlawful business acts violative of the Unfair Practices Act.

## IV

Finally, defendant's statutory interpretation argument is unpersuasive. Section 17082 provides that the plaintiff "shall be entitled to recover" treble damages. Defendant argues that "the issue of statutory interpretation hinges on the meaning of the word 'entitle' " and "entitle" means a plaintiff is qualified for treble damages but not automatically awarded treble damages. We disagree.

By section 17082's own terms, a plaintiff can bring an action for injunctive relief without proving actual damages. However, to be *entitled* to treble damages a plaintiff must prove actual damages. Hence, we believe the word "entitled" signifies that a plaintiff "qualifies" for the right to mandatory treble damages once he proves actual damages. In the absence of such proof, treble damages are not permitted and a plaintiff is limited to an injunctive remedy.

Aside from the contentions raised by the plaintiff, a further point is worthy of comment. There is a rule applicable to appellate practice which requires a plaintiff who appeals from a judgment in his favor on the ground of inadequate damages to have moved for a new trial in order to have standing to raise such issue on appeal. Stated otherwise, "It is the law that such a motion is a condition precedent to urging inadequacy of damages on appeal. [Citation.]" (*Mendoyoma, Inc.* v. *County of Mendocino,* 8 Cal.App.3d 873, 877 [87 Cal.Rptr. 740].)

We raise the foregoing point to distinguish this case from one urging "inadequacy" of damages. Such a contention is one involving an evaluation of the evidence, and that is not the kind of error assigned in the case now before us. The error assigned which we hold to be well taken is one involving the interpretation of a statute, and in *Mendoyoma* it was noted that other kinds of errors could be raised on appeal without the necessity of a motion for a new trial. More particularly, "[b]ut the rule that prevents plaintiff from now urging inadequacy of damages does not prevent him from urging [other] errors . . . ." (*Id.,* at p. 877.)

## DISPOSITION

In sum then, it is our view that the proper application of section 17082 to the case proved by plaintiff entitles it to three times the damages awarded. In so holding, we are doing nothing more nor less than following the federal decisions which apply federal statutes similar in content and purpose to the California statute here under consideration. The judgment is ordered modified accordingly. As thus modified, the judgment is affirmed. However, plaintiff shall recover its costs on appeal.

Gardner, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied December 21, 1978, and respondents' petition for a hearing by the Supreme Court was denied February 21, 1979.