LEVY, J.
*116 *119 Appellant Ted Switzer (Switzer or appellant) prevailed at trial against cross-defendants Robert Clark "Sonny" Wood II and Access Medical, LLC (Wood and Access Medical or respondents) on causes of action that included fraud, conversion of property and treble damages under Penal Code[1] section 496. The present appeal focuses on the section 496 causes of action. Although section 496 defines a criminal offense, it also provides an enhanced civil remedy in the event there has been a violation of the statute-that is, where a person has knowingly received, withheld or sold property that has been stolen or that has been obtained in any manner constituting theft. ( § 496, subd. (a) ( § 496(a) ).) The enhanced civil remedy authorized by the statute is that any party injured by the violation of section 496 may file an action for "three times the amount of actual damages " sustained, and for costs of suit and reasonable attorney fees. ( § 496, subd. (c) ( § 496(c) ), italics added.) Here, even though the jury returned a special verdict that found Wood and Access Medical violated section 496(a), the trial court declined to award treble damages to Switzer under the statute. The trial court reasoned that, despite the literal wording of section 496(c), the Legislature could not have intended to apply the treble damage remedy to wrongful conduct committed in the context of a joint venture or preexisting business relationship where ordinary fraud and breach of contract *120 remedies would be available. In subsequent posttrial orders, the trial court also denied two motions filed by Switzer: (i) a motion for attorney fees premised on section 496(c) relating to Switzer's cross-complaint, and (ii) a motion to amend the judgment to add a successor entity as a new judgment debtor.
Switzer appeals from the judgment, as a partial appeal only, arguing that the trial court erred in failing to award treble damages as required under the clear terms of section 496(c). Switzer further argues the trial court or jury erred in calculating the amount of prejudgment interest, which he asserts should be corrected at this time. Finally, Switzer claims the trial court erred in denying the portion of his motion for attorney fees premised on section 496(c), and additionally erred in denying his motion to modify the judgment to add an alleged successor entity as an additional judgment debtor.
In the published portion of this opinion, we conclude that Switzer is entitled to treble damages under section 496(c). That statute is clear and unambiguous, and its remedial provisions should be applied where, as here, a clear violation of section 496(a) has been found. Accordingly, the judgment is reversed, in part, and the matter is remanded to the trial court to enter a modified judgment that includes treble damages on the section 496 causes of action. Furthermore, in the unpublished portion of this opinion, we reverse the trial court's denial of Switzer's motion for attorney fees premised on section 496(c), and the matter is remanded to the trial court for further proceedings to determine the appropriate amount of attorney fees to be awarded pursuant to section 496(c), after which a new order shall be entered awarding the amount of section 496(c) attorney fees so determined. In all other respects, the judgment and orders of the trial court are affirmed.
*117 FACTS AND PROCEDURAL HISTORY
The Pleadings
For purposes of the present appeal, the relevant pleading is Switzer's cross-complaint, which was filed on June 3, 2013. In that cross-complaint, Switzer alleged direct claims against Wood and Access Medical for, among other things, breach of contract, fraud, breach of fiduciary duty/constructive fraud, conversion, negligence, and for the civil remedies provided by section 496(c). In addition to the direct claims described above, Switzer's cross-complaint also alleged several derivative claims on behalf of the two-member limited liability company, Flournoy Management, LLC (Flournoy), of which Switzer was the non-managing member and Wood was the managing member. Switzer's derivative claims on behalf of Flournoy included causes of action against Wood and Access Medical for breach of manager's duty, fraud, conversion, negligence, and for the civil remedies provided by section 496(c).
*121 Although the allegations in Switzer's cross-complaint are multifaceted and complex, it appears that the crux of Switzer's claims arose out of a joint venture or business relationship he entered into with Wood in 2011 that lasted only a short time. Apparently, both Switzer and Wood, individually or through shell companies, had been in the business of selling medical devices, including spinal implants. In May of 2011, they agreed to go into business together. A limited liability company (i.e., Flournoy) was formed and a partnership or joint venture arrangement was agreed to. Under the joint venture arrangement, income from their business enterprises would flow to Flournoy, then after certain reimbursements and expenses were paid, profits would be distributed in equal shares to Wood and Switzer. According to the allegations of the cross-complaint, not long after this business venture got started, Wood deceitfully took possession of, converted, and withheld for himself large sums of money or income belonging to Switzer and/or to Flournoy, and Wood also converted valuable property items belonging to Switzer (i.e., spinal implant inventory) and, upon selling said property items, kept the profits for himself.
In both his direct and derivative claims under section 496, Switzer's cross-complaint asserted, based on relevant foundational allegations referred to in the pleading, that "[t]he acts of Mr. Wood constitute a violation of Penal Code § 496(a), thus entitling Mr. Switzer to recover from Mr. Wood treble the amount of actual damages sustained by Mr. Switzer, along with Mr. Switzer's costs of suit and reasonable attorney's fees ...."
The Trial and Verdict
The case was tried before a jury for a period of 21 days, beginning on August 22, 2017. The jury began its deliberations on October 3, 2017, and finally returned a special verdict on October 11, 2017. In the jury's special verdict, it found in favor of Switzer and against Wood and Access Medical on Switzer's direct claims in his cross-complaint for breach of contract, intentional misrepresentation, concealment, breach of fiduciary duty, conversion, negligence, and the civil claim for violation of Penal Code section 496. A second part of the special verdict form addressed Switzer's derivative claims on behalf of Flournoy. There, the jury found in favor of Switzer and against Wood and Access Medical on Switzer's derivative claims in the cross-complaint for concealment, breach of manager's duty, negligence, and the civil claim for violation of Penal Code section 496. The jury also specifically *118 found that Wood and Access Medical had acted with malice, fraud or oppression.
Where called upon to do so on the special verdict form, the jury made specific findings on the amount of actual damages sustained by Switzer on his causes of action. For example, on Switzer's conversion cause of action, the *122 jury found that the value of the spinal implants converted by Wood and Access Medical was $513,083, and that Switzer's damages for lost profits due to the conversion was also $513,083. Other damages found to have been sustained by Switzer included $293,904.67 in unreimbursed expenses, and $318,666 in lost partnership profits for sales made in 2011. As to Switzer's direct section 496 claim, the actual damages sustained by Switzer due to Wood's and Access Medical's violation of section 496 were found to be the sum of $1,289,165. As to Switzer's derivative claim on behalf of Flournoy for Wood's and Access Medical's violation of section 496, the actual damages were found to be $401,232.
The jury also inserted, where requested to do so on the special verdict form, amounts of prejudgment interest. In particular, the jury awarded prejudgment interest of $64,732 on Switzer's conversion causes of action, and $77,283 on Switzer's non-conversion claims. As to Switzer's derivative causes of action on behalf of Flournoy, the jury awarded prejudgment interest of $50,620.
The jury's special findings of fact concerning the section 496 causes of action were clear, definite and complete, answering in the affirmative each of the following specific questions covering the elements of a section 496(a) violation: "1. Did Mr. Wood obtain by theft property belonging to Mr. Switzer or conceal or withhold or aid in concealing or withholding such property from Mr. Switzer? [¶] ... [¶] 2. Did Mr. Wood know the property was obtained by theft at the time he received, withheld, concealed, aided in concealing or withholding the property from Mr. Switzer? [¶] ... [¶] 3. Did Mr. Wood's violation of Penal Code section 496, subdivision (a), cause Mr. Switzer to suffer injury, damage, loss or harm?" The fourth question to the jury concerning this claim was "[w]hat is the amount of Mr. Switzer's actual damages caused by Mr. Wood's violation of Penal Code section 496, subdivision (a) ?" to which the jury responded by inserting the following amount: "$1,289,165.00." We note the jury made identical findings of fact on Switzer's derivative claim under section 496 on behalf of Flournoy, with the only difference being that the amount of actual damages was $401,232. On both the direct and derivative claims under section 496, the same findings of fact were made against both Wood and Access Medical.
Postverdict Briefing
After the verdict, Switzer submitted to the trial court a proposed judgment premised on the special verdict which recapitulated the special verdict and, pursuant to section 496(c), included an award of three times the amount of actual damages found by the jury to have been suffered by Switzer and Flournoy as a result of Wood's and Access Medical's violations of section 496.
*123 Thereafter, Wood and Access Medical submitted objections to the proposed judgment, arguing among other things that section 496(c) was not applicable in this case because the statute was only intended to apply to claims by common carriers of theft of commercial cargo and not to ordinary business disputes. This objection relating to section 496(c) 's treble damage remedy had not been raised by Wood or Access Medical in any previous filing in the trial court; it had not been raised in their motion for nonsuit or in their motion for directed verdict.
*119 In response to Wood's and Access Medical's objections to the proposed judgment, the trial court permitted Wood and Access Medical to file an opposition along with their own proposed judgment. Thereafter, Wood and Access Medical filed a proposed judgment deleting the parts of the judgment which awarded treble damages and attorney fees pursuant to section 496(c). Switzer objected, arguing that inclusion of an award of treble damages and attorney fees in the judgment was mandatory under section 496(c). Switzer filed a reply brief to the trial court, explaining further that section 496(c) is applicable in this case "and in every case where property has been acquired by theft."
On November 27, 2017, the trial court issued its tentative statement of decision and proposed judgment on special verdict. In that document, the trial court agreed with the analysis provided by Wood and Access Medical that section 496(c) was inapplicable. The tentative statement of decision and proposed judgment did not include treble damages or attorney fees under section 496(c). The trial court explained that application of the treble damages provision of section 496"in standard breach of contract, fraud, conversion, and misrepresentation claims ... would [lead][2 ] to an unreasonable result." The trial court stated the correctness of its result was further reinforced by legislative history indicating the treble damage remedy had a narrow purpose of " 'tak[ing] the profit out of cargo thievery.' "
Switzer filed objections to the trial court's tentative statement of decision and proposed judgment. Wood and Access Medical thereafter filed a response to the objections, to which Switzer filed a reply.
The Judgment
On January 12, 2018, the trial court entered its final statement of decision and judgment on special verdict (the judgment). The portions of the judgment *124 relating to the application of section 496(c) were identical to what the trial court had expressed in its tentative statement of decision and proposed judgment. That is, the trial court found section 496(c) was inapplicable. As noted, the trial court's decision to decline to award treble damages under section 496(c) was based on the trial court's reasoning that allowing the treble damages remedy in standard breach of contract, fraud or similar business disputes "would [lead] to an unreasonable result." Furthermore, the trial court explained: "In the Court's view, the Legislature could not have intended Penal Code section 496 to apply in the case of an ordinary contractual dispute, or fraud case, arising in the course of an ongoing legitimate business relationship between the parties. [¶] The Court therefore declines to award treble damages in this case."
Switzer's Motion to Amend Judgment to Name Additional Judgment Debtor
On February 1, 2018, Switzer filed a motion to amend the judgment to, among other things, add as a judgment debtor Alpine Medical Management Group, LLC, aka Alpine Surgical Group (Alpine), which was allegedly the successor company to Access Medical at one or more of the hospitals from which Wood and Access Medical stole Flournoy's business and profits. Wood and Access Medical opposed *120 the motion, arguing that Alpine was not shown to be the successor entity of Access Medical. The trial court denied the motion on March 6, 2018.
Switzer's Motion for Attorney Fees
On February 1, 2018, Switzer filed a motion for attorney fees seeking, among other things, an award of attorney fees against Wood and Access Medical based on section 496(c). The attorney fees sought by the motion related to three different or severable parts of the overall litigation: (1) attorney fees on "the Flournoy cross-complaint" pursuant to a provision in the parties' operating agreement relating to Flournoy; (2) attorney fees on "the Switzer's records inspection complaint" as authorized by former Corporations Code section 17106, subdivision (g) ; and (3) attorney fees on "the Switzer Cross-Complaint" as authorized by section 496(c). The trial court acknowledged all three aspects of the attorney fee motion, but it only granted attorney fees relating to the Flournoy cross-complaint and Switzer's records inspection complaint. Therefore, implicitly, the trial court denied the attorney fee motion under section 496(c) relating to Switzer's cross-complaint.
Notices of Appeal
Switzer filed two notices of appeal; one relating to his appeal from the judgment and from the order denying his motion to amend the judgment *125 (F077206), and a second notice relating to the trial court's denial of his motion for attorney fees (F077493). The two appeals have been consolidated under case number F077206.
DISCUSSION
I. Standard of Review
"Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo." ( Jenkins v. County of Riverside (2006) 138 Cal.App.4th 593, 604, 41 Cal.Rptr.3d 686.) A question of the proper measure of damages in a particular case is likewise an issue of law subject to de novo review, and such issue may be considered on appeal even though the appellant did not move for a new trial. ( Christiansen v. Roddy (1986) 186 Cal.App.3d 780, 789, 231 Cal.Rptr. 72 ; Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co . (1977) 66 Cal.App.3d 101, 122, 135 Cal.Rptr. 802 ; see also, Uneedus v. California Shoppers, Inc . (1978) 86 Cal.App.3d 932, 943-944, 150 Cal.Rptr. 596 [interpretation of treble damages statute is a question of law].) Similarly, whether a legal basis exists for an award of attorney fees is a question of law subject to de novo review. ( Dell Merk, Inc. v. Franzia (2005) 132 Cal.App.4th 443, 450, 33 Cal.Rptr.3d 694.)
Where there is a clear error of law in the calculation of damages, an appellate court has the power to modify the judgment to correct that error. ( Maughan v. Correia (2012) 210 Cal.App.4th 507, 523, 148 Cal.Rptr.3d 593.) This includes the power to correct a clearly improper award of prejudgment interest. (See Pacific-Southern Mortgage Trust Co . v. Insurance Co. of North America (1985) 166 Cal.App.3d 703, 716-717, 212 Cal.Rptr. 754 ; Johnson v. Marr (1935) 8 Cal.App.2d 312, 315, 47 P.2d 489.)
Finally, as to the motion to amend the judgment to name an additional judgment debtor, we review the trial court's ruling under the abuse of discretion standard, with any factual findings relied upon by the trial court reviewed for substantial evidence. ( Wolf Metals Inc. v. Rand Pacific Sales Inc . (2016) 4 Cal.App.5th 698, 703, 209 Cal.Rptr.3d 198.)
*121 II. Treble Damages Pursuant to Section 496
Switzer argues the trial court erred in failing to apply the treble damage remedy specified in section 496(c). We agree.
We begin with the express terms and structure of the statute. Section 496(a) defines the criminal offense of what is commonly referred to as receiving *126 stolen property, while section 496(c) sets forth a right to special civil remedies where a violation of section 496(a) has occurred. Specifically, section 496(a) states in relevant part as follows: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.... [¶] A principal in the actual theft of the property may be convicted pursuant to this section." Subdivision (b) of section 496 describes a variation of the offense applicable to the activities of swap meet vendors. Section 496(c) then plainly states as follows: "Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees ." (Italics added.)
The language of section 496(c) is clear and unambiguous. ( Bell v. Feibush (2013) 212 Cal.App.4th 1041, 1045-1047, 151 Cal.Rptr.3d 546.) A criminal conviction is not a prerequisite to recovery of treble damages. All that is required for civil liability to attach under section 496(c), including entitlement to treble damages, is that a "violation" of subdivision (a) or (b) of section 496 is found to have occurred. ( Bell v. Feibush, at pp. 1045-1047, 151 Cal.Rptr.3d 546.) A violation may be found to have occurred if the person engaged in the conduct described in the statute. ( Lacagnina v. Comprehend Systems, Inc . (2018) 25 Cal.App.5th 955, 970, 236 Cal.Rptr.3d 641 ; Bell v. Feibush , supra , 212 Cal.App.4th at p. 1045, 151 Cal.Rptr.3d 546 [a "violation" occurs "when the subject engages in" the conduct described in the statute].) While section 496(a) covers a spectrum of impermissible activity relating to stolen property, the elements required to show a violation of section 496(a) are simply that (i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property. ( Lacagnina v. Comprehend Systems , Inc ., supra , 25 Cal.App.5th at p. 970, 236 Cal.Rptr.3d 641 [elements of § 496 offense stated].)
A violation of section 496(a) may, by its own terms, relate to property that has been "stolen" or "that has been obtained in any manner constituting theft or extortion." ( § 496(a), italics added.) As reflected in Bell v. Feibush , supra , 212 Cal.App.4th at p. 1048, 151 Cal.Rptr.3d 546, the issue of whether a wrongdoer's conduct in any manner constituted a "theft" is elucidated by other provisions of the Penal Code defining theft, such as Penal Code section 484. In 1927, the Legislature consolidated the crimes of larceny, embezzlement, and theft by false pretense in Penal Code section 484, subdivision (a), under the single term "theft." ( Bell v. Feibush , at p. 1048, 151 Cal.Rptr.3d 546 ; see also People v. Vidana (2016) 1 Cal.5th 632, 640-641, 206 Cal.Rptr.3d 556, 377 P.3d 805 [although the distinctive *127 substantive elements of each offense remained the same, each constituted *122 the crime of "theft"]; People v. Gomez (2008) 43 Cal.4th 249, 255, fn. 4, 74 Cal.Rptr.3d 123, 179 P.3d 917.) Section 484, subdivision (a), states as follows: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft ." (Italics added.)
In Bell v. Feibush , supra , 212 Cal.App.4th 1041, 151 Cal.Rptr.3d 546, the trial court awarded treble damages to the plaintiff under section 496(c) based on evidence presented in a default prove-up hearing that the defendant had committed theft by false pretenses in violation of section 496(a). ( Bell v. Feibush, at pp. 1043-1044, 151 Cal.Rptr.3d 546.) The defendant appealed on several grounds. Bell v. Feibush affirmed the award of treble damages, holding that (i) theft by false pretenses constituted a violation of section 496(a), and (ii) a criminal conviction was not a prerequisite to civil liability for treble damages. ( Bell v. Feibush, at pp. 1045-1046, 1048-1049, 151 Cal.Rptr.3d 546.) The court observed that where a violation of section 496(a) or 496(b) is established in a civil action, as was the case there, "a person injured by the violation may recover treble damages under section 496(c)." ( Bell v. Feibush, at p. 1045, 151 Cal.Rptr.3d 546.) Further, in affirming the treble damage recovery Bell v. Feibush rejected the defendant's policy argument that allowing treble damages under section 496(c) would circumvent traditional limits on civil remedies: "Our decision to affirm the default judgment is based on straightforward statutory interpretation." ( Bell v. Feibush, at p. 1049, 151 Cal.Rptr.3d 546.) That being the case, such "policy concerns" would have to be addressed to the Legislature. ( Ibid . ) In sum, since a violation of section 496(a) had been shown (i.e., theft by false pretenses), treble damages were properly awarded under section 496(c).
In the present case, it is undisputed that the jury specifically and unequivocally found all the factual elements necessary to establish that Wood and Access Medical had engaged in conduct constituting a violation of section 496(a). As to Switzer's direct claim under section 496 in his cross-complaint, the findings made by the jury on the special verdict form included that (i) Wood and Access Medical obtained by theft property belonging to Switzer, and concealed or withheld such property and/or aided in concealing or withholding such property from Switzer; (ii) Wood and Access Medical knew the property was obtained by theft at the time they received, withheld, concealed, or aided in concealing or withholding the property from Switzer; and (iii) Wood's and Access Medical's violation of section 496(a) caused *128 Switzer to suffer actual damage, loss or harm. The identical factual elements were found by the jury with respect to Switzer's derivative claim under section 496 on behalf of Flournoy. These explicit findings of fact by the jury, which have not been challenged on appeal, clearly establish violation(s) of section 496(a).
That being the case, under the plain and literal terms of section 496(c), Switzer was entitled to an award of three times his actual damages that were found by the jury on both the direct and derivative section 496 causes of action.
*123 Notwithstanding the clarity of the statute's remedial provisions and their direct application here in light of the jury's findings, the position of Wood and Access Medical in the present appeal mirrors that of the trial court-namely, that section 496(c) should not be applied in a literal manner because the Legislature could not have intended to extend the statutory treble damage remedy into the context of an ordinary business dispute where traditional remedies for breach of contract, fraud and conversion were available. Rather, it is argued that despite the clear and unambiguous wording of the statutory provision, a narrower construction should be adopted to avoid absurdity, such as a construction that limits treble damages to theft crimes involving common carriers' cargo. Because this line of argument involves statutory interpretation, we respond by first articulating the principles applicable to that task.
We recently summarized some of the fundamental rules of statutory construction in the case of California State University, Fresno Assn., Inc. v. County of Fresno (2017) 9 Cal.App.5th 250, 266, 215 Cal.Rptr.3d 45, as follows: " 'In ascertaining the meaning of a statute, we look to the intent of the Legislature as expressed by the actual words of the statute' [citation], 'giving them a plain and commonsense meaning' [citation]. 'We examine the language first, as it is the language of the statute itself that has "successfully braved the legislative gauntlet." [Citation.]' [¶] 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.] 'When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it.' [Citations.] 'We will not speculate that the Legislature meant something other than what it said. Nor will we rewrite a statute to posit an unexpressed intent.' [Citations.]"
Under the plain meaning rule, when the language of a statute is clear, we need go no further. ( Nolan v. City of Anaheim (2004) 33 Cal.4th 335, 340, 14 Cal.Rptr.3d 857, 92 P.3d 350.) In that case, "no court need, or should, go beyond that pure expression of legislative intent. [Citation.]" ( Green v. State of California (2007) 42 Cal.4th 254, 260, 64 Cal.Rptr.3d 390, 165 P.3d 118.)
*129 Again, "[i]f the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs." ( Wells v. One2One Learning Foundation (2006) 39 Cal.4th 1164, 1190, 48 Cal.Rptr.3d 108, 141 P.3d 225.) "When statutory language is unambiguous, we must follow its plain meaning ' " 'whatever may be thought of the wisdom, expediency, or policy of the act, even if it appears probable that a different object was in the mind of the legislature.' " ' [Citations.]" ( In re D.B . (2014) 58 Cal.4th 941, 948, 169 Cal.Rptr.3d 672, 320 P.3d 1136.) As the Supreme Court has emphasized, the judiciary's role in determining the meaning of a statute " ' "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted ...." [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' [Citation.]" ( People v. Leal (2004) 33 Cal.4th 999, 1008, 16 Cal.Rptr.3d 869, 94 P.3d 1071.)
An exception exists to the plain meaning rule. A court is not required to follow the plain meaning of a statute when to do so would frustrate the manifest purpose of the legislation as a whole or otherwise lead to absurd results. ( *124 California School Employees Assn. v. Governing Board (1994) 8 Cal.4th 333, 340, 33 Cal.Rptr.2d 109, 878 P.2d 1321 ; see also, DaFonte v. Up-Right, Inc . (1992) 2 Cal.4th 593, 601, 7 Cal.Rptr.2d 238, 828 P.2d 140 [stating rule that plain meaning may be disregarded only when that meaning is repugnant to the general purview of the act or for some other compelling reason].) However, the absurdity exception requires much more than showing that troubling consequences may potentially result if the statute's plain meaning were followed or that a different approach would have been wiser or better. ( In re D.B., supra, 58 Cal.4th at p. 948, 169 Cal.Rptr.3d 672, 320 P.3d 1136 ; L.G. v. M.B . (2018) 25 Cal.App.5th 211, 227, 235 Cal.Rptr.3d 494.) Rather, "[t]o justify departing from a literal reading of a clearly worded statute, the results produced must be so unreasonable the Legislature could not have intended them." ( In re D.B. , supra , 58 Cal.4th at p. 948, 169 Cal.Rptr.3d 672, 320 P.3d 1136.) Moreover, our courts have wisely cautioned that the absurdity exception to the plain meaning rule "should be used most sparingly by the judiciary and only in extreme cases else we violate the separation of powers principle of government. [Citation.] We do not sit as a 'super-legislature.' [Citation.]" ( Unzueta v. Ocean View School Dist . (1992) 6 Cal.App.4th 1689, 1698, 8 Cal.Rptr.2d 614.)
In the present case, we do not find the plain meaning of section 496(c) to be absurd at all, much less so absurd in its results that we would be permitted to disregard its literal wording. Section 496(c) clearly and simply requires, as a prerequisite for treble damages, that a "violation" of the criminal offense described in the statute has been shown and that such violation has caused actual damage. The wording of the statute makes no exception for cases involving preexisting business relationships, nor does it *130 limit applicability to violations involving common carriers or truck cargo, and we are not at liberty to insert such omitted terms into the statute. Again, our function is not to judge the wisdom of the statute, and we are not empowered to insert what a legislative body has omitted from its enactments. ( Wells Fargo Bank v. Superior Court (1991) 53 Cal.3d 1082, 1099, 282 Cal.Rptr. 841, 811 P.2d 1025.)
Based on the plain wording of section 496(c), the Legislature apparently believed that any violation of section 496(a) (or of subdivision (b)), if proven, would warrant the availability of treble damages. The creation of an enhanced civil remedy for any person injured by the theft-related criminal offenses defined in the statute is certainly not absurd or unreasonable. Considering the nature of the offense described by the statute and the apparent goal of deterring such theft-related conduct, the provision as literally written of an enhanced civil remedy to "any person" injured by that particular offense constituted a reasonable legislative policy decision. The fact that the treble damage remedy may come into play where (as here) the parties were in a preexisting business relationship in which the remedies at law have traditionally been limited (e.g., for fraud, conversion or breach of contract)-while arguably a valid policy argument-manifestly falls short of establishing the absurdity exception. In the final analysis, we are unable to conclude that the results produced by a literal reading of the statute would be "so unreasonable the Legislature could not have intended them." ( In re D.B. , supra , 58 Cal.4th at p. 948, 169 Cal.Rptr.3d 672, 320 P.3d 1136 [potentially "troubling" consequences not enough]; Bell v. Feibush , supra , 212 Cal.App.4th at p. 1049, 151 Cal.Rptr.3d 546 [policy concerns about potential consequences insufficient to overcome statute's plain wording].) In other words, the potential results of following *125 the unambiguous literal wording of section 496(c) are not so absurd or unreasonable that we would be justified to override its plain meaning.
As was appropriately stated by the Court of Appeal in Bell v. Feibush , supra , 212 Cal.App.4th at page 1049, 151 Cal.Rptr.3d 546 : "We are not unmindful of [the defendant's] policy concerns about the potential consequences of our interpretation of section 496(c). But it is the task of the Legislature to address those policy concerns ." (Italics added.) We agree with that caveat and will also adhere to the Supreme Court's fundamental admonition that "[w]hen statutory language is unambiguous, we must follow its plain meaning ' " 'whatever may be thought of the wisdom, expediency, or policy of the act ....' " ' " ( In re D.B ., supra , 58 Cal.4th at p. 948, 169 Cal.Rptr.3d 672, 320 P.3d 1136.) Of course, as always "[t]he Legislature ... remains free to amend [the statute] if the language it has enacted is now understood to create unintended consequences." ( Ibid . )
*131 Next, respondents would have us resort to legislative history as a basis for supporting its argument the Legislature intended section 496(c) to have a much narrower reach than its plain language would indicate. When statutory language is clear and unambiguous, as here, resort to the legislative history is unwarranted. ( California State University, Fresno Assn., Inc. v. County of Fresno, supra, 9 Cal.App.5th at p. 268, 215 Cal.Rptr.3d 45.) Nevertheless, even if we were to consider the legislative history, our conclusion would remain unchanged. As discussed below, the legislative history here fails to establish respondents' posited narrow interpretation.
Section 496 was amended in 1972 by Senate Bill No. 1068, which added the civil remedy provision currently set forth in subdivision (c). ( Citizens of Humanity, LLC v. Costco Wholesale Corp . (2009) 171 Cal.App.4th 1, 17-18, 89 Cal.Rptr.3d 455.) When Senate Bill No. 1068 was first introduced, the proposed bill would authorize "[a]ny person who has been injured by a violation of this section" to bring an action for civil remedies including three times the amount of actual damages. (Sen. Bill No. 1068 (1972 Reg. Sess.) as introduced Mar. 15, 1972, italics added.) Later, Senate Bill No. 1068 was amended to limit the civil remedy to "for-hire carriers" injured by a violation of section 496. (Sen. Amend. to Sen. Bill No. 1068 (1972 Reg. Sess.) May 30, 1972.) The specified remedy to "for-hire carriers" was not itself surprising, since it appears from a committee report that the bill was supported by the California Trucking Association and one of the goals of the bill was the elimination of markets for stolen property or cargo. ( Citizens of Humanity, LLC v. Costco Wholesale Corp ., supra, 171 Cal.App.4th at p. 18, 89 Cal.Rptr.3d 455.) However, this narrower version of the remedial section in the bill (i.e., civil remedy only to for-hire carriers) was short-lived. One month later, a subsequent amendment restored the earlier version of the bill by expanding the civil remedy of treble damages to "any person" who had been injured by a violation. ( Ibid . ) The expansive "any person" wording is what was ultimately passed by the Legislature and became law. The court in Bell v. Feibush , supra , 212 Cal.App.4th at p. 1047, 151 Cal.Rptr.3d 546 made the following observation relevant to issues before it: "This history shows the Legislature believed the deterrent effect of criminal sanctions was not enough to reduce thefts. The means to reduce thefts, the Legislature concluded, was to dry up the market for stolen goods by permitting treble damage recovery by 'any person' injured by the knowing purchase, receipt, concealment, or *126 withholding of property stolen or obtained by theft."
Finally, while deterrence of theft was one of the goals of Senate Bill No. 1068, another purpose for the proposed legislation was expressly stated in the analysis provided by the Senate Committee on the Judiciary, under the heading "Purpose," which expressed that the bill's basic *132 purpose was to "[e]stablish a civil remedy for persons who have been injured by another's purchase, concealment, sale, or withholding of property where such person knows the property has been stolen." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1068 (1972 Reg. Sess.) as amended June 26, 1972.)
As the above outline of the legislative history makes clear, although Senate Bill No. 1068 may have been briefly amended during the legislative committee process to have a narrower remedial focus (i.e., for-hire carriers), the Legislature ultimately restored the wording giving a treble damage remedy to "any person" who was injured by a violation of section 496. Therefore, because the Legislature clearly approved and endorsed the broader scope of the civil remedy as provided in current section 496(c), we conclude the legislative history does not support respondents' contention that section 496(c) was intended to have a narrow focus that would apply only to common carriers or to situations involving theft in the cargo industry.
In conclusion, because the language of section 496(c) is clear and unambiguous, we are required to apply its plain meaning in this case. Under that plain meaning, because violations of section 496(a) were determined by the jury to have occurred, Switzer was entitled to an award of three times his actual damages that were found by the jury on both the direct and derivative section 496 causes of action against Wood and Access Medical.
III.-V.**
DISPOSITION
The judgment of the trial court is reversed, in part, due to the trial court's failure to award treble damages under section 496(c), and the matter is remanded to the trial court to enter a modified judgment that includes treble damages under section 496 on Switzer's direct and derivative section 496 causes of action. Additionally, the trial court's denial of Switzer's motion for attorney fees premised on section 496(c) is reversed, and that matter is remanded to the trial court for further proceedings to determine the appropriate amount of attorney fees to be awarded pursuant to section 496(c), after *133 which a new order shall be entered awarding the amount of section 496(c) attorney fees so determined. In all other respects, the judgment and orders of the trial court are affirmed.
WE CONCUR:
HILL, P.J.
PEÑA, J.

Unless otherwise indicated, all further statutory references are to the Penal Code.

The actual wording used in the tentative statement of decision and proposed judgment was that applying section 496 to cases such as this one would "lend to an unreasonable result." We assume that was a typographical error and the trial court intended to say "lead" to an unreasonable result.

See footnote *, ante .