Filed 4/15/19; part. pub. & mod. order 5/10/19 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TED SWITZER,<br><br>    Cross-complainant and Appellant,<br><br>        v.<br><br>ROBERT CLARK "SONNY" WOOD II et al.,<br><br>    Cross-defendants and Respondents. | F077206/F077493<br><br>(Super. Ct. No. 11CECG04395)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

Gregory L. Altounian and Michael Carrigan for Cross-complainant and Appellant.

Robert Clark "Sonny" Wood II, in pro. per.; and Timothy D. McGonigle, for Cross-defendants and Respondents.

-ooOoo-

Appellant Ted Switzer (Switzer or appellant) prevailed at trial against cross-defendants Robert Clark "Sonny" Wood II and Access Medical, LLC (Wood and Access Medical or respondents) on causes of action that included fraud, conversion of property

and treble damages under Penal Code[1] section 496.  The present appeal focuses on the section 496 causes of action.  Although section 496 defines a criminal offense, it also provides an enhanced civil remedy in the event there has been a violation of the statute— that is, where a person has knowingly received, withheld or sold property that has been stolen or that has been obtained in any manner constituting theft.  (§ 496, subd. (a) (§ 496(a)).)  The enhanced civil remedy authorized by the statute is that any party injured by the violation of section 496 may file an action for "*three times the amount of actual damages*" sustained, and for costs of suit and reasonable attorney fees.  (§ 496, subd. (c) (§ 496(c)), italics added.)  Here, even though the jury returned a special verdict that found Wood and Access Medical violated section 496(a), the trial court declined to award treble damages to Switzer under the statute.  The trial court reasoned that, despite the literal wording of section 496(c), the Legislature could not have intended to apply the treble damage remedy to wrongful conduct committed in the context of a joint venture or preexisting business relationship where ordinary fraud and breach of contract remedies would be available.  In subsequent posttrial orders, the trial court also denied two motions filed by Switzer:  (i) a motion for attorney fees premised on section 496(c) relating to Switzer's cross-complaint, and (ii) a motion to amend the judgment to add a successor entity as a new judgment debtor.

Switzer appeals from the judgment, as a partial appeal only, arguing that the trial court erred in failing to award treble damages as required under the clear terms of section 496(c).  Switzer further argues the trial court or jury erred in calculating the amount of prejudgment interest, which he asserts should be corrected at this time.  Finally, Switzer claims the trial court erred in denying the portion of his motion for attorney fees premised on section 496(c), and additionally erred in denying his motion to modify the judgment to add an alleged successor entity as an additional judgment debtor.

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

We conclude that Switzer is correct on the legal issues raised under section 496(c), including his entitlement to treble damages. That statute is clear and unambiguous, and its remedial provisions should be applied where, as here, a clear violation of section 496(a) has been found. Accordingly, the judgment is reversed, in part, and the matter is remanded to the trial court to enter a modified judgment that includes treble damages on the section 496 causes of action. Furthermore, the trial court's denial of Switzer's motion for attorney fees premised on section 496(c) is reversed, and the matter is remanded to the trial court for further proceedings to determine the appropriate amount of attorney fees to be awarded pursuant to section 496(c), after which a new order shall be entered awarding the amount of section 496(c) attorney fees so determined. In all other respects, the judgment and orders of the trial court are affirmed.

## FACTS AND PROCEDURAL HISTORY

The Pleadings

For purposes of the present appeal, the relevant pleading is Switzer's cross-complaint, which was filed on June 3, 2013. In that cross-complaint, Switzer alleged direct claims against Wood and Access Medical for, among other things, breach of contract, fraud, breach of fiduciary duty/constructive fraud, conversion, negligence, and for the civil remedies provided by section 496(c). In addition to the direct claims described above, Switzer's cross-complaint also alleged several derivative claims on behalf of the two-member limited liability company, Flournoy Management, LLC (Flournoy), of which Switzer was the non-managing member and Wood was the managing member. Switzer's derivative claims on behalf of Flournoy included causes of action against Wood and Access Medical for breach of manager's duty, fraud, conversion, negligence, and for the civil remedies provided by section 496(c).

Although the allegations in Switzer's cross-complaint are multifaceted and complex, it appears that the crux of Switzer's claims arose out of a joint venture or business relationship he entered into with Wood in 2011 that lasted only a short time.

3.

Apparently, both Switzer and Wood, individually or through shell companies, had been in the business of selling medical devices, including spinal implants. In May of 2011, they agreed to go into business together. A limited liability company (i.e., Flournoy) was formed and a partnership or joint venture arrangement was agreed to. Under the joint venture arrangement, income from their business enterprises would flow to Flournoy, then after certain reimbursements and expenses were paid, profits would be distributed in equal shares to Wood and Switzer. According to the allegations of the cross-complaint, not long after this business venture got started, Wood deceitfully took possession of, converted, and withheld for himself large sums of money or income belonging to Switzer and/or to Flournoy, and Wood also converted valuable property items belonging to Switzer (i.e., spinal implant inventory) and, upon selling said property items, kept the profits for himself.

In both his direct and derivative claims under section 496, Switzer's cross-complaint asserted, based on relevant foundational allegations referred to in the pleading, that "[t]he acts of Mr. Wood constitute a violation of Penal Code § 496(a), thus entitling Mr. Switzer to recover from Mr. Wood treble the amount of actual damages sustained by Mr. Switzer, along with Mr. Switzer's costs of suit and reasonable attorney's fees ...."

The Trial and Verdict

The case was tried before a jury for a period of 21 days, beginning on August 22, 2017. The jury began its deliberations on October 3, 2017, and finally returned a special verdict on October 11, 2017. In the jury's special verdict, it found in favor of Switzer and against Wood and Access Medical on Switzer's direct claims in his cross-complaint for breach of contract, intentional misrepresentation, concealment, breach of fiduciary duty, conversion, negligence, and the civil claim for violation of Penal Code section 496. A second part of the special verdict form addressed Switzer's derivative claims on behalf of Flournoy. There, the jury found in favor of Switzer and against Wood and Access Medical on Switzer's derivative claims in the cross-complaint for concealment, breach of

4.

manager's duty, negligence, and the civil claim for violation of Penal Code section 496. The jury also specifically found that Wood and Access Medical had acted with malice, fraud or oppression.

Where called upon to do so on the special verdict form, the jury made specific findings on the amount of actual damages sustained by Switzer on his causes of action. For example, on Switzer's conversion cause of action, the jury found that the value of the spinal implants converted by Wood and Access Medical was $513,083, and that Switzer's damages for lost profits due to the conversion was also $513,083. Other damages found to have been sustained by Switzer included $293,904.67 in unreimbursed expenses, and $318,666 in lost partnership profits for sales made in 2011. As to Switzer's direct section 496 claim, the actual damages sustained by Switzer due to Wood's and Access Medical's violation of section 496 were found to be the sum of $1,289,165. As to Switzer's derivative claim on behalf of Flournoy for Wood's and Access Medical's violation of section 496, the actual damages were found to be $401,232.

The jury also inserted, where requested to do so on the special verdict form, amounts of prejudgment interest. In particular, the jury awarded prejudgment interest of $64,732 on Switzer's conversion causes of action, and $77,283 on Switzer's non-conversion claims. As to Switzer's derivative causes of action on behalf of Flournoy, the jury awarded prejudgment interest of $50,620.

The jury's special findings of fact concerning the section 496 causes of action were clear, definite and complete, answering in the affirmative each of the following specific questions covering the elements of a section 496(a) violation: "1. Did Mr. Wood obtain by theft property belonging to Mr. Switzer or conceal or withhold or aid in concealing or withholding such property from Mr. Switzer? [¶] … [¶] 2. Did Mr. Wood know the property was obtained by theft at the time he received, withheld, concealed, aided in concealing or withholding the property from Mr. Switzer? [¶] … [¶] 3. Did Mr.

5.

Wood's violation of Penal Code section 496, subdivision (a), cause Mr. Switzer to suffer injury, damage, loss or harm?" The fourth question to the jury concerning this claim was "[w]hat is the amount of Mr. Switzer's actual damages caused by Mr. Wood's violation of Penal Code section 496, subdivision (a)?" to which the jury responded by inserting the following amount: "$1,289,165.00." We note the jury made identical findings of fact on Switzer's derivative claim under section 496 on behalf of Flournoy, with the only difference being that the amount of actual damages was $401,232. On both the direct and derivative claims under section 496, the same findings of fact were made against both Wood *and* Access Medical.

Postverdict Briefing

After the verdict, Switzer submitted to the trial court a proposed judgment premised on the special verdict which recapitulated the special verdict and, pursuant to section 496(c), included an award of three times the amount of actual damages found by the jury to have been suffered by Switzer and Flournoy as a result of Wood's and Access Medical's violations of section 496. Thereafter, Wood and Access Medical submitted objections to the proposed judgment, arguing among other things that section 496(c) was not applicable in this case because the statute was only intended to apply to claims by common carriers of theft of commercial cargo and not to ordinary business disputes. This objection relating to section 496(c)'s treble damage remedy had not been raised by Wood or Access Medical in any previous filing in the trial court; it had not been raised in their motion for nonsuit or in their motion for directed verdict.

In response to Wood's and Access Medical's objections to the proposed judgment, the trial court permitted Wood and Access Medical to file an opposition along with their own proposed judgment. Thereafter, Wood and Access Medical filed a proposed judgment deleting the parts of the judgment which awarded treble damages and attorney fees pursuant to section 496(c). Switzer objected, arguing that inclusion of an award of treble damages and attorney fees in the judgment was mandatory under section 496(c).

6.

Switzer filed a reply brief to the trial court, explaining further that section 496(c) is applicable in this case "and in every case where property has been acquired by theft."

On November 27, 2017, the trial court issued its tentative statement of decision and proposed judgment on special verdict. In that document, the trial court agreed with the analysis provided by Wood and Access Medical that section 496(c) was inapplicable. The tentative statement of decision and proposed judgment did not include treble damages or attorney fees under section 496(c). The trial court explained that application of the treble damages provision of section 496 "in standard breach of contract, fraud, conversion, and misrepresentation claims … would [lead][2] to an unreasonable result." The trial court stated the correctness of its result was further reinforced by legislative history indicating the treble damage remedy had a narrow purpose of " 'tak[ing] the profit out of cargo thievery.' "

Switzer filed objections to the trial court's tentative statement of decision and proposed judgment. Wood and Access Medical thereafter filed a response to the objections, to which Switzer filed a reply.

The Judgment

On January 12, 2018, the trial court entered its final statement of decision and judgment on special verdict (the judgment). The portions of the judgment relating to the application of section 496(c) were identical to what the trial court had expressed in its tentative statement of decision and proposed judgment. That is, the trial court found section 496(c) was inapplicable. As noted, the trial court's decision to decline to award treble damages under section 496(c) was based on the trial court's reasoning that allowing the treble damages remedy in standard breach of contract, fraud or similar

---

**2**     The actual wording used in the tentative statement of decision and proposed judgment was that applying section 496 to cases such as this one would "lend to an unreasonable result." We assume that was a typographical error and the trial court intended to say "lead" to an unreasonable result.

7.

business disputes "would [lead] to an unreasonable result." Furthermore, the trial court explained: "In the Court's view, the Legislature could not have intended Penal Code section 496 to apply in the case of an ordinary contractual dispute, or fraud case, arising in the course of an ongoing legitimate business relationship between the parties. [¶] The Court therefore declines to award treble damages in this case."

Switzer's Motion to Amend Judgment to Name Additional Judgment Debtor

On February 1, 2018, Switzer filed a motion to amend the judgment to, among other things, add as a judgment debtor Alpine Medical Management Group, LLC, aka Alpine Surgical Group (Alpine), which was allegedly the successor company to Access Medical at one or more of the hospitals from which Wood and Access Medical stole Flournoy's business and profits. Wood and Access Medical opposed the motion, arguing that Alpine was not shown to be the successor entity of Access Medical. The trial court denied the motion on March 6, 2018.

Switzer's Motion for Attorney Fees

On February 1, 2018, Switzer filed a motion for attorney fees seeking, among other things, an award of attorney fees against Wood and Access Medical based on section 496(c). The attorney fees sought by the motion related to three different or severable parts of the overall litigation: (1) attorney fees on "the Flournoy cross-complaint" pursuant to a provision in the parties' operating agreement relating to Flournoy; (2) attorney fees on "the Switzer's records inspection complaint" as authorized by former Corporations Code section 17106, subdivision (g); and (3) attorney fees on "the Switzer Cross-Complaint" as authorized by section 496(c). The trial court acknowledged all three aspects of the attorney fee motion, but it only granted attorney fees relating to the Flournoy cross-complaint and Switzer's records inspection complaint. Therefore, implicitly, the trial court denied the attorney fee motion under section 496(c) relating to Switzer's cross-complaint.

8.

<u>Notices of Appeal</u>

Switzer filed two notices of appeal; one relating to his appeal from the judgment and from the order denying his motion to amend the judgment (F077206), and a second notice relating to the trial court's denial of his motion for attorney fees (F077493). The two appeals have been consolidated under case number F077206.

## **DISCUSSION**

### **I. Standard of Review**

"Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo." (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 604.) A question of the proper measure of damages in a particular case is likewise an issue of law subject to de novo review, and such issue may be considered on appeal even though the appellant did not move for a new trial. (*Christiansen v. Roddy* (1986) 186 Cal.App.3d 780, 789; *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co*. (1977) 66 Cal.App.3d 101, 122; see also, *Uneedus v. California Shoppers, Inc*. (1978) 86 Cal.App.3d 932, 943–944 [interpretation of treble damages statute is a question of law].) Similarly, whether a legal basis exists for an award of attorney fees is a question of law subject to de novo review. (*Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 450.)

Where there is a clear error of law in the calculation of damages, an appellate court has the power to modify the judgment to correct that error. (*Maughan v. Correia* (2012) 210 Cal.App.4th 507, 523.) This includes the power to correct a clearly improper award of prejudgment interest. (See *Pacific-Southern Mortgage Trust Co. v. Insurance Co. of North America* (1985) 166 Cal.App.3d 703, 716–717; *Johnson v. Marr* (1935) 8 Cal.App.2d 312, 315.)

Finally, as to the motion to amend the judgment to name an additional judgment debtor, we review the trial court's ruling under the abuse of discretion standard, with any

factual findings relied upon by the trial court reviewed for substantial evidence. (*Wolf Metals Inc. v. Rand Pacific Sales Inc*. (2016) 4 Cal.App.5th 698, 703.)

## II.  Treble Damages Pursuant to Section 496

Switzer argues the trial court erred in failing to apply the treble damage remedy specified in section 496(c).  We agree.

We begin with the express terms and structure of the statute.  Section 496(a) defines the criminal offense of what is commonly referred to as receiving stolen property, while section 496(c) sets forth a right to special civil remedies where a violation of section 496(a) has occurred.  Specifically, section 496(a) states in relevant part as follows:  "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170.…  [¶]  A principal in the actual theft of the property may be convicted pursuant to this section."  Subdivision (b) of section 496 describes a variation of the offense applicable to the activities of swap meet vendors.  Section 496(c) then plainly states as follows:  "*Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees*."  (Italics added.)

The language of section 496(c) is clear and unambiguous.  (*Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1045–1047.)  A criminal conviction is not a prerequisite to recovery of treble damages.  All that is required for civil liability to attach under section 496(c), including entitlement to treble damages, is that a "violation" of subdivision (a) or (b) of section 496 is found to have occurred.  (*Bell v. Feibush,* at pp. 1045–1047.)  A violation may be found to have occurred if the person engaged in the conduct described

in the statute.  (*Lacagnina v. Comprehend Systems, Inc*. (2018) 25 Cal.App.5th 955, 970; *Bell v. Feibush*, *supra,* 212 Cal.App.4th at p. 1045 [a "violation" occurs "when the subject engages in" the conduct described in the statute].)  While section 496(a) covers a spectrum of impermissible activity relating to stolen property, the elements required to show a violation of section 496(a) are simply that (i) property was stolen or obtained in a manner constituting theft, (ii) the defendant knew the property was so stolen or obtained, and (iii) the defendant received or had possession of the stolen property.  (*Lacagnina v. Comprehend Systems*, *Inc*., *supra*, 25 Cal.App.5th at p. 970 [elements of § 496 offense stated].)

A violation of section 496(a) may, by its own terms, relate to property that has been "stolen" *or* "that has been obtained *in any manner constituting theft* or extortion." (§ 496(a), italics added.)  As reflected in *Bell v. Feibush*, *supra*, 212 Cal.App.4th at p. 1048, the issue of whether a wrongdoer's conduct in any manner constituted a "theft" is elucidated by other provisions of the Penal Code defining theft, such as Penal Code section 484.  In 1927, the Legislature consolidated the crimes of larceny, embezzlement, and theft by false pretense in Penal Code section 484, subdivision (a), under the single term "theft."  (*Bell v. Feibush*, at p. 1048; see also *People v. Vidana* (2016) 1 Cal.5th 632, 640–641 [although the distinctive substantive elements of each offense remained the same, each constituted the crime of "theft"]; *People v. Gomez* (2008) 43 Cal.4th 249, 255, fn. 4.)  Section 484, subdivision (a), states as follows:  "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains

11.

possession of money, or property or obtains the labor or service of another, *is guilty of theft*." (Italics added.)

In *Bell v. Feibush*, *supra*, 212 Cal.App.4th 1041, the trial court awarded treble damages to the plaintiff under section 496(c) based on evidence presented in a default prove-up hearing that the defendant had committed theft by false pretenses in violation of section 496(a). (*Bell v. Feibush*, at pp. 1043–1044.) The defendant appealed on several grounds. *Bell v. Feibush* affirmed the award of treble damages, holding that (i) theft by false pretenses constituted a violation of section 496(a), and (ii) a criminal conviction was not a prerequisite to civil liability for treble damages. (*Bell v. Feibush*, at pp. 1045–1046, 1048–1049.) The court observed that where a violation of section 496(a) or 496(b) is established in a civil action, as was the case there, "a person injured by the violation may recover treble damages under section 496(c)." (*Bell v. Feibush*, at p. 1045.) Further, in affirming the treble damage recovery *Bell v. Feibush* rejected the defendant's policy argument that allowing treble damages under section 496(c) would circumvent traditional limits on civil remedies: "Our decision to affirm the default judgment is based on straightforward statutory interpretation." (*Bell v. Feibush*, at p. 1049.) That being the case, such "policy concerns" would have to be addressed to the Legislature. (*Ibid*.) In sum, since a violation of section 496(a) had been shown (i.e., theft by false pretenses), treble damages were properly awarded under section 496(c).

In the present case, it is undisputed that the jury specifically and unequivocally found all the factual elements necessary to establish that Wood and Access Medical had engaged in conduct constituting a violation of section 496(a). As to Switzer's direct claim under section 496 in his cross-complaint, the findings made by the jury on the special verdict form included that (i) Wood and Access Medical obtained by theft property belonging to Switzer, and concealed or withheld such property and/or aided in concealing or withholding such property from Switzer; (ii) Wood and Access Medical knew the property was obtained by theft at the time they received, withheld, concealed,

12.

or aided in concealing or withholding the property from Switzer; and (iii) Wood's and Access Medical's violation of section 496(a) caused Switzer to suffer actual damage, loss or harm. The identical factual elements were found by the jury with respect to Switzer's derivative claim under section 496 on behalf of Flournoy. These explicit findings of fact by the jury, which have not been challenged on appeal, clearly establish violation(s) of section 496(a).

That being the case, under the plain and literal terms of section 496(c), Switzer was entitled to an award of three times his actual damages that were found by the jury on both the direct and derivative section 496 causes of action.

Notwithstanding the clarity of the statute's remedial provisions and their direct application here in light of the jury's findings, the position of Wood and Access Medical in the present appeal mirrors that of the trial court—namely, that section 496(c) should not be applied in a literal manner because the Legislature could not have intended to extend the statutory treble damage remedy into the context of an ordinary business dispute where traditional remedies for breach of contract, fraud and conversion were available. Rather, it is argued that despite the clear and unambiguous wording of the statutory provision, a narrower construction should be adopted to avoid absurdity, such as a construction that limits treble damages to theft crimes involving common carriers' cargo. Because this line of argument involves statutory interpretation, we respond by first articulating the principles applicable to that task.

We recently summarized some of the fundamental rules of statutory construction in the case of *California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 266, as follows: " 'In ascertaining the meaning of a statute, we look to the intent of the Legislature as expressed by the actual words of the statute' [citation], 'giving them a plain and commonsense meaning' [citation]. 'We examine the language first, as it is the language of the statute itself that has "successfully braved the legislative gauntlet." [Citation.]' [¶] 'If there is no ambiguity in the language, we presume the

13.

Legislature meant what it said and the plain meaning of the statute governs.' [Citation.] 'When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it.' [Citations.] 'We will not speculate that the Legislature meant something other than what it said. Nor will we rewrite a statute to posit an unexpressed intent.' [Citations.]"

Under the plain meaning rule, when the language of a statute is clear, we need go no further. (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) In that case, "no court need, or should, go beyond that pure expression of legislative intent. [Citation.]" (*Green v. State of California* (2007) 42 Cal.4th 254, 260.) Again, "[i]f the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.) "When statutory language is unambiguous, we must follow its plain meaning ' " 'whatever may be thought of the wisdom, expediency, or policy of the act, even if it appears probable that a different object was in the mind of the legislature.' " ' [Citations.]" (*In re D.B.* (2014) 58 Cal.4th 941, 948.) As the Supreme Court has emphasized, the judiciary's role in determining the meaning of a statute " ' "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or omit what has been inserted …." [Citation.] We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' [Citation.]" (*People v. Leal* (2004) 33 Cal.4th 999, 1008.)

An exception exists to the plain meaning rule. A court is not required to follow the plain meaning of a statute when to do so would frustrate the manifest purpose of the legislation as a whole or otherwise lead to absurd results. (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340; see also, *DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [stating rule that plain meaning may be disregarded only when that meaning is repugnant to the general purview of the act or for some other compelling

14.

reason].)  However, the absurdity exception requires much more than showing that troubling consequences may potentially result if the statute's plain meaning were followed or that a different approach would have been wiser or better.  (*In re D.B., supra,* 58 Cal.4th at p. 948; *L.G. v. M.B*. (2018) 25 Cal.App.5th 211, 227.)  Rather, "[t]o justify departing from a literal reading of a clearly worded statute, the results produced must be so unreasonable the Legislature could not have intended them."  (*In re D.B.*, *supra*, 58 Cal.4th at p. 948.)  Moreover, our courts have wisely cautioned that the absurdity exception to the plain meaning rule "should be used most sparingly by the judiciary and only in extreme cases else we violate the separation of powers principle of government.  [Citation.]  We do not sit as a 'super-legislature.'  [Citation.]"  (*Unzueta v. Ocean View School Dist*. (1992) 6 Cal.App.4th 1689, 1698.)

In the present case, we do not find the plain meaning of section 496(c) to be absurd at all, much less so absurd in its results that we would be permitted to disregard its literal wording.  Section 496(c) clearly and simply requires, as a prerequisite for treble damages, that a "violation" of the criminal offense described in the statute has been shown and that such violation has caused actual damage.  The wording of the statute makes no exception for cases involving preexisting business relationships, nor does it limit applicability to violations involving common carriers or truck cargo, and we are not at liberty to insert such omitted terms into the statute.  Again, our function is not to judge the wisdom of the statute, and we are not empowered to insert what a legislative body has omitted from its enactments.  (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1099.)

Based on the plain wording of section 496(c), the Legislature apparently believed that *any* violation of section 496(a) (or of subdivision (b)), if proven, would warrant the availability of treble damages.  The creation of an enhanced civil remedy for any person injured by the theft-related criminal offenses defined in the statute is certainly not absurd or unreasonable.  Considering the nature of the offense described by the statute and the

15.

apparent goal of deterring such theft-related conduct, the provision as literally written of an enhanced civil remedy to "any person" injured by that particular offense constituted a reasonable legislative policy decision. The fact that the treble damage remedy may come into play where (as here) the parties were in a preexisting business relationship in which the remedies at law have traditionally been limited (e.g., for fraud, conversion or breach of contract)—while arguably a valid policy argument—manifestly falls short of establishing the absurdity exception. In the final analysis, we are unable to conclude that the results produced by a literal reading of the statute would be "so unreasonable the Legislature could not have intended them." (*In re D.B.*, *supra*, 58 Cal.4th at p. 948 [potentially "troubling" consequences not enough]; *Bell v. Feibush*, *supra*, 212 Cal.App.4th at p. 1049 [policy concerns about potential consequences insufficient to overcome statute's plain wording].) In other words, the potential results of following the unambiguous literal wording of section 496(c) are not so absurd or unreasonable that we would be justified to override its plain meaning.

As was appropriately stated by the Court of Appeal in *Bell v. Feibush*, *supra*, 212 Cal.App.4th at page 1049: "We are not unmindful of [the defendant's] policy concerns about the potential consequences of our interpretation of section 496(c). *But it is the task of the Legislature to address those policy concerns*." (Italics added.) We agree with that caveat and will also adhere to the Supreme Court's fundamental admonition that "[w]hen statutory language is unambiguous, we must follow its plain meaning ' " 'whatever may be thought of the wisdom, expediency, or policy of the act ….' " ' " (*In re D.B.*, *supra*, 58 Cal.4th at p. 948.) Of course, as always "[t]he Legislature … remains free to amend [the statute] if the language it has enacted is now understood to create unintended consequences." (*Ibid*.)

Next, respondents would have us resort to legislative history as a basis for supporting its argument the Legislature intended section 496(c) to have a much narrower reach than its plain language would indicate. When statutory language is clear and

unambiguous, as here, resort to the legislative history is unwarranted. (*California State University, Fresno Assn., Inc. v. County of Fresno, supra,* 9 Cal.App.5th at p. 268.) Nevertheless, even if we were to consider the legislative history, our conclusion would remain unchanged. As discussed below, the legislative history here fails to establish respondents' posited narrow interpretation.

Section 496 was amended in 1972 by Senate Bill No. 1068, which added the civil remedy provision currently set forth in subdivision (c). (*Citizens of Humanity, LLC v. Costco Wholesale Corp*. (2009) 171 Cal.App.4th 1, 17–18.) When Senate Bill No. 1068 was first introduced, the proposed bill would authorize "*[a]ny person* who has been injured by a violation of this section" to bring an action for civil remedies including three times the amount of actual damages. (Sen. Bill No. 1068 (1972 Reg. Sess.) as introduced Mar. 15, 1972, italics added.) Later, Senate Bill No. 1068 was amended to limit the civil remedy to "for-hire carriers" injured by a violation of section 496. (Sen. Amend. to Sen. Bill No. 1068 (1972 Reg. Sess.) May 30, 1972.) The specified remedy to "for-hire carriers" was not itself surprising, since it appears from a committee report that the bill was supported by the California Trucking Association and one of the goals of the bill was the elimination of markets for stolen property or cargo. (*Citizens of Humanity, LLC v. Costco Wholesale Corp., supra,* 171 Cal.App.4th at p. 18.) However, this narrower version of the remedial section in the bill (i.e., civil remedy only to for-hire carriers) was short-lived. One month later, a subsequent amendment restored the earlier version of the bill by expanding the civil remedy of treble damages to "any person" who had been injured by a violation. (*Ibid.*) The expansive "any person" wording is what was ultimately passed by the Legislature and became law. The court in *Bell v. Feibush*, *supra*, 212 Cal.App.4th at p. 1047 made the following observation relevant to issues before it: "This history shows the Legislature believed the deterrent effect of criminal sanctions was not enough to reduce thefts. The means to reduce thefts, the Legislature concluded, was to dry up the market for stolen goods by permitting treble damage

17.

recovery by 'any person' injured by the knowing purchase, receipt, concealment, or withholding of property stolen or obtained by theft."

Finally, while deterrence of theft was one of the goals of Senate Bill No. 1068, another purpose for the proposed legislation was expressly stated in the analysis provided by the Senate Committee on the Judiciary, under the heading "Purpose," which expressed that the bill's basic purpose was to "[e]stablish a civil remedy for persons who have been injured by another's purchase, concealment, sale, or withholding of property where such person knows the property has been stolen." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1068 (1972 Reg. Sess.) as amended June 26, 1972.)

As the above outline of the legislative history makes clear, although Senate Bill No. 1068 may have been briefly amended during the legislative committee process to have a narrower remedial focus (i.e., for-hire carriers), the Legislature ultimately restored the wording giving a treble damage remedy to "any person" who was injured by a violation of section 496. Therefore, because the Legislature clearly approved and endorsed the broader scope of the civil remedy as provided in current section 496(c), we conclude the legislative history does *not* support respondents' contention that section 496(c) was intended to have a narrow focus that would apply only to common carriers or to situations involving theft in the cargo industry.

In conclusion, because the language of section 496(c) is clear and unambiguous, we are required to apply its plain meaning in this case. Under that plain meaning, because violations of section 496(a) were determined by the jury to have occurred, Switzer was entitled to an award of three times his actual damages that were found by the jury on both the direct and derivative section 496 causes of action against Wood and Access Medical.**3**

---

**3**     We are of the opinion that a treble damage award is mandatory where, as here, the violation of section 496(a) has been shown. Nothing in the wording of section 496(c) reflects that where a violation has been established, the specific relief provided for in the

18.

## III. Attorney Fees

Switzer argues the trial court also erred in its failure to award attorney fees pursuant to section 496(c). We agree. Section 496(c) not only provides for recovery of treble damages, but also "costs of suit, and reasonable attorney's fees." Because, as we have explained above, the section 496(c) remedies were fully applicable in this case, Switzer was entitled to a recovery of his attorney fees and costs relating to the section 496 causes of action in his cross-complaint.

As noted previously above, the attorney fees sought by Switzer's motion for attorney fees in the trial court related to three severable parts of the overall litigation: (1) attorney fees on "the Flournoy cross-complaint" pursuant to a provision in the parties' operating agreement relating to Flournoy; (2) attorney fees on "the Switzer's records inspection complaint" as authorized by former Corporations Code section 17106, subdivision (g); and (3) attorney fees on "the Switzer Cross-Complaint" as authorized by

statute of treble damages would be optional or discretionary. A similarly worded civil remedy provided under the Penal Code is set forth in section 637.2, which states that "[a]ny person who has been injured by a violation of this chapter [relating to unlawful recording of private conversations] may bring an action against the person who committed the violation" for "[f]ive thousand dollars ($5,000) per violation" or "three times the amount of actual damages," whichever is greater. (§ 637.2, subd. (a).) Under case law, the injured party's right to recover the specified damage amount or civil penalty stated in section 637.2 has been treated as mandatory, not discretionary, once the underlying violation has been established. (See *Friddle v. Epstein* (1993) 16 Cal.App.4th 1649, 1660–1661 [where former per-violation amount of $3,000 was sought, and an actionable violation of section 632 was established, the "right" to recover that statutory amount accrued; held, judgment must be modified to award each defendant $3,000 under their cross-complaints].) We think the same interpretation would apply to section 496(c). (See also *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1601 [unlike punitive damage awards, the amount of statutory damages is set by the Legislature]; *Uneedus v. California Shoppers, Inc.*, *supra*, 86 Cal.App.3d 932, 944 [statutory language "entitled to recover" treble damages "signifies that a plaintiff 'qualifies' for the right to mandatory treble damages once he proves actual damages"]; *Los Angeles County Metropolitan Transportation Authority v. Superior Court* (2004) 123 Cal.App.4th 261, 276 [noting most statutory civil penalties are mandatory once liability is established, unlike punitive damages].)

section 496(c). The trial court acknowledged all three aspects of the attorney fee motion, but it only granted attorney fees relating to the Flournoy cross-complaint and Switzer's records inspection complaint. Therefore, implicitly—yet clearly—the trial court denied the attorney fee motion under section 496(c) relating to Switzer's cross-complaint.

The trial court's refusal to award attorney fees to Switzer under section 496(c) constituted reversible error, and that portion of the trial court's attorney fee order is accordingly reversed. The matter is remanded to the trial court for further proceedings to determine the appropriate amount of attorney fees and costs to award to Switzer under section 496(c) relating to his section 496 causes of action in his cross-complaint. The trial court shall then enter a new order granting Switzer's motion for attorney fees under section 496(c) in the amount so determined.

## IV. Prejudgment Interest

The jury's special verdict found that Switzer was entitled to a recovery of prejudgment interest on both the direct and derivative claims presented to the jury, which claims related to property losses and damages incurred by Switzer in 2011. On the special verdict form, the jury could and did insert dollar amounts constituting prejudgment interest with respect to Switzer's damages. The judgment entered by the trial court in January 2018 included the specific amounts awarded by the jury for prejudgment interest, but those amounts were far below the legal rate of interest permitted by law of 7 percent per year. By Switzer's calculations, which appear to be accurate, the amounts awarded reflect a prejudgment interest rate of approximately 1 to 2 percent, rather than 7 percent, per annum.

In the present appeal, Switzer contends that the amount and/or calculation of prejudgment interest awarded by the jury constituted legal error on the face of the record and should be corrected on appeal. Switzer points out that where a jury determines a plaintiff is entitled to an award of prejudgment interest as an element of damages, the function of the award is to compensate the plaintiff for the loss of use of his or her

20.

property over time, measured from the date of loss until the time judgment is entered. (See *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc*. (2014) 226 Cal.App.4th 26, 69; *Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 815 ["Prejudgment interest is awarded to compensate a party for the loss of the use of his or her property"].) Moreover, as observed by Switzer, the interest rate allowed by law where the jury decides to award prejudgment interest under Civil Code section 3288 is 7 percent per year, which is the same rate that is applicable under Civil Code section 3287. (See, e.g., *Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 921; *Michelson v. Hamada* (1994) 29 Cal.App.4th 1566 [interest rate under Civil Code section 3288 for fraud claim was 7 percent]; *Pacific-Southern Mortgage Trust Co. v. Insurance. Co. of North America, supra,* 166 Cal.App.3d at p. 716 [in absence of legislative act to the contrary, the rate of prejudgment interest is 7 percent].)

However, Civil Code section 3288 states: "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, *in the discretion of the jury*." (Italics added.) This language has been construed to mean that the trier of fact, whether jury or the court, appropriately decides the issue of prejudgment interest under this section. (*Michelson v. Hamada*, *supra*, 29 Cal.App.4th at pp. 1586–1587.) "It is always the trier of fact that determines the issue of damages and this is true with regard to prejudgment interest pursuant to section 3288." (*Id.* at p. 1586.)

The gist of Switzer's argument is that anytime a jury exercises its discretion to award prejudgment interest under Civil Code section 3288, it is required in every instance to award the maximum interest allowable by law—namely, 7 percent per year. However, while it is true that 7 percent is the maximum rate for calculating prejudgment interest under Civil Code section 3288, Switzer has not presented any case authority for the proposition that the jury must, in every case, always award the full amount of the maximum interest rate available by law. Therefore, Switzer has failed to meet his burden

21.

of clearly and affirmatively demonstrating legal error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [because a trial court's order is presumed correct, and all intendments are indulged to support it, error must be affirmatively shown]; *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557 [an appellant's burden is to affirmatively show error based on adequate legal argument supported by the record]; *Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 482 [the appellant's failure to provide adequate legal analysis of a complex legal issue results in its forfeiture].)

More than that, Switzer has failed to provide an adequate record of the trial evidence and testimony, or of how the jury was instructed on this issue, to shed light on whether there could have been any underlying factual or legal rationale for awarding prejudgment interest in the amount the jury did here. (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416 [where record inadequate for meaningful review of an issue, it is forfeited on appeal].) In view of these deficiencies, we hold there is a further impediment to Switzer's argument—namely, it does not appear that this issue was ever raised in the trial court. There was extensive briefing in the trial court regarding the proposed judgment, but we have found no evidence that Switzer ever raised or challenged the award of prejudgment interest in the trial court where it could have been readily corrected, if error was made. It has been held with respect to a party's claim that the jury or trial court erred in its award of prejudgment interest, that if the award was not objected to in the trial court, the issue is forfeited on appeal. (*Jones v. Wagner* (2001) 90 Cal.App.4th 466, 481–482 [so holding].) Under the circumstances, we conclude that is the case here.

Based on the foregoing, we find that Switzer has failed to meet his burden of demonstrating that clear and reversible error occurred with respect to the calculation of prejudgment interest by the jury.

22.

**V. Motion to Amend Judgment to Include Additional Judgment Debtor**

Lastly, Switzer contends the trial court abused its discretion by denying his motion to add an additional judgment debtor—namely, Alpine Medical Management Group, LLC, aka Alpine Surgical Group (Alpine)—to the judgment. On balance, we conclude that Switzer has failed to demonstrate an abuse of discretion.

Under Code of Civil Procedure section 187, a trial court has discretion to modify a judgment to add additional judgment debtors. (*Wolf Metals Inc. v. Rand Pacific Sales Inc., supra,* 4 Cal.App.5th at p. 703.) The grounds for doing so include situations where the new party is an alter ego of an existing judgment debtor, or where the new party is a successor entity that is a *mere continuation* of an existing judgment debtor. (*Id.* at pp. 703–705.) Here, Switzer contends Alpine is liable as a successor entity of Access Medical.

According to the successor entity theory, the general rule is that "when a corporation sells or transfers all of its assets to another corporation constituting its ' "mere continuation," ' the latter is also liable for the former's debts and liabilities." (*Wolf Metals Inc. v. Rand Pacific Sales Inc.*, *supra*, 4 Cal.App.5th at pp. 704–705; accord, *McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 753.) "California decisions holding that a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts have imposed such liability only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." (*Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 29; accord, *Wolf Metals Inc. v. Rand Pacific Sales Inc.*, *supra*, 4 Cal.App.5th at p. 705; *McClellan v. Northridge Park Townhome Owners Assn.*, *supra*, 89 Cal.App.4th at p. 753.) The significant principle is that " '[i]f a corporation organizes another corporation with practically the same shareholders and directors,

23.

transfers all the assets but does not pay all the first corporation's debts, and continues to carry on the same business, the separate entities may be disregarded and the new corporation held liable for the obligations of the old.' " (*McClellan v. Northridge Park Townhome Owners Assn*, *supra*, 89 Cal.App.4th at p. 753.)

The equitable basis for concluding that such a successor entity is liable is that " 'corporations cannot escape liability by a mere change of name or a shift of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old. Especially is this well settled when actual fraud or the rights of creditors are involved, under which circumstances the courts uniformly hold the new corporation liable for the debts of the former corporation.' [Citation.]" (*Cleveland v. Johnson* (2012) 209 Cal.App.4th 1315, 1327.) As with other equitable doctrines, it is appropriate to examine successor liability issues based on the unique facts and circumstances of each case. (*Id.* at pp. 1330, 1334.) In *Cleveland*, the appellate court upheld a jury's determination of successor liability where the original business entity transferred only part of its total operations to the successor entity and the original business entity continued to do some business by carrying out the retained operations while the successor entity took over the transferred operations. (*Id.* at pp. 1327–1334.)

Here, Switzer filed a motion in the trial court to modify the judgment to add Alpine as an additional judgment debtor on the ground that Alpine is a successor entity of Access Medical in regard to certain spinal implant business that had been conducted by Access Medical at an Atlanta hospital, and possibly at hospitals in Las Vegas as well. The trial court denied the motion, noting the evidence was incomplete or unpersuasive, and explained its ruling as follows: "The moving papers do not show that Access Medical transferred all of its assets to Alpine, or that Alpine did not pay adequate compensation for the assets of Access Medical that it did acquire or for the line of business it took over. The court would expect to see in a motion such as this more detailed evidence about what operations and business Access Medical carries on, if any.

All that has been shown is that Alpine has taken over one line of business that Access Medical was engaged in. Without more, the court cannot conclude that Alpine is the successor of Access Medical which apparently is still an active entity."

The evidence in support of the motion reflected, among other things, that Alpine was formed in 2014 as a new company to permit the usage of other spinal implant products from suppliers besides the exclusive supplier contractually required to be used by Access Medical. Once Alpine was formed, the spinal implant business at the Atlanta hospital was carried out by Alpine instead of Access Medical. In at least one instance, it was communicated to a vendor that the change from Access Medical to Alpine was the result of an acquisition and it was requested that the vendor's records be revised to reflect the name change. Both companies were owned or managed by Wood, and both used the same mailing address.

At the same time, the trial court is correct that there was no clear evidence regarding the nature of any purchase by, or the extent of any transfer of assets to, Alpine, or of whether Alpine was inadequately capitalized, or of whether Access Medical has continued to exist and operate. (See, e.g., *Beatrice Co. v. State Bd. of Equalization* (1993) 6 Cal.4th 767, 778 [noting that successor liability is generally not imposed when recourse to the debtor corporation is still available and the two corporations have separate identities].) Further, we note that nothing in the record indicated that Wood or Access Medical potentially lacked adequate resources to satisfy the judgment. As the trial court found, "[a]ll that has been shown is that Alpine has taken over *one line of business* that Access Medical was engaged in." (Italics added.)

We believe the decision made by the trial court to deny the motion was within its range of judicial discretion. Switzer points out that in *Cleveland v. Johnson*, *supra*, 209 Cal.App.4th at pages 1327–1334, the appellate court was willing to affirm the trier of fact's finding of successor liability where, as here, the original business entity transferred only *part* of its total operations to the successor entity. However, it is one thing to

25.

conclude that a trier of fact could permissibly find successor liability under the unique circumstances and equities of a particular case, as the court did in *Cleveland*, and quite another to say that successor liability *must* be found as a matter of law. For the reasons articulated by the trial court in its order, we are unable to conclude on the state of the record here that the trial court was *required* to find Alpine was a successor entity. Accordingly, Switzer has failed to demonstrate the trial court abused its discretion when it denied his motion to add Alpine as a judgment debtor.

## DISPOSITION

The judgment of the trial court is reversed, in part, due to the trial court's failure to award treble damages under section 496(c), and the matter is remanded to the trial court to enter a modified judgment that includes treble damages under section 496 on Switzer's direct and derivative section 496 causes of action. Additionally, the trial court's denial of Switzer's motion for attorney fees premised on section 496(c) is reversed, and that matter is remanded to the trial court for further proceedings to determine the appropriate amount of attorney fees to be awarded pursuant to section 496(c), after which a new order shall be entered awarding the amount of section 496(c) attorney fees so determined. In all other respects, the judgment and orders of the trial court are affirmed.

_____
LEVY, J.

WE CONCUR:


_____
HILL, P.J.


_____
PEÑA, J.

26.

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TED SWITZER,<br><br>    Cross-complainant and Appellant,<br><br>        v.<br><br>ROBERT CLARK "SONNY" WOOD II et al.,<br><br>    Cross-defendants and Respondents. | F077206/F077493<br><br>(Super. Ct. No. 11CECG04395)<br><br>**ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION AND MODIFYING OPINION**<br><br>**[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

The opinion in the above-entitled matter filed on April 15, 2019, was not certified for publication in the Official Reports. After the court's review of requests under California Rules of Court, rule 8.1120, and good cause established under rule 8.1105, it is hereby ordered that the opinion should be published, with the exception of parts III, IV and V of the Discussion, in the Official Reports.

It is further ordered that the opinion filed on April 15, 2019, be modified as follows:

1.    On page 3, the first full paragraph is deleted in its entirety and is replaced with the following paragraph:

In the published portion of this opinion, we conclude that Switzer is entitled to treble damages under section 496(c). That statute is clear and unambiguous, and its remedial provisions should be applied where, as here, a clear violation of

27.

section 496(a) has been found.  Accordingly, the judgment is reversed, in part, and the matter is remanded to the trial court to enter a modified judgment that includes treble damages on the section 496 causes of action.  Furthermore, in the unpublished portion of this opinion, we reverse the trial court's denial of Switzer's motion for attorney fees premised on section 496(c), and the matter is remanded to the trial court for further proceedings to determine the appropriate amount of attorney fees to be awarded pursuant to section 496(c), after which a new order shall be entered awarding the amount of section 496(c) attorney fees so determined.  In all other respects, the judgment and orders of the trial court are affirmed.

2.      On pages 18 and 19, footnote 3 is deleted in its entirety.

Except for the modifications set forth, the opinion previously filed remains unchanged.

These modifications do not effect a change in the judgment.


_____

LEVY, J.

WE CONCUR:


_____

HILL, P.J.


_____

PEÑA, J.

28.