Filed 7/22/25; Certified for Publication 8/21/25 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RANDY R. JOHNSON, | |
| Plaintiff and Appellant, | G064240 |
| v. | (Super. Ct. No. 30-2022-<br> 01248762) |
| CONNIE, LLC, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Andre De La Cruz, Judge. Reversed with directions.

Lakeshore Law Center, Jeffrey N. Wilens, and Macy Wilens for Plaintiff and Appellant.

Russo & Duckworth and J. Scott Russo for Defendants and Respondents.

Plaintiff Randy R. Johnson appeals from a nominal judgment entered in his favor after the trial court granted a motion for directed verdict against him. The court found his payment of illegally increased rent did not

support his claim based on Penal Code section 496,[1] which authorizes civil remedies for its violation. (*Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 362 (*Siry*).) We agree with plaintiff that sufficient evidence supported liability under section 496, based upon the statute's broad wording. (*Id.* at pp. 349, 361, 363–364.) We reverse the judgment and remand for further proceedings.

FACTS

I.

THE RENT INCREASE

We state the facts in the light most favorable to plaintiff and disregard conflicting evidence. (*Watts v. Pneumo Abex, LLC* (2024) 106 Cal.App.5th 248, 258 (*Watts*).) In 1995, plaintiff entered a lease to rent an apartment in a triplex, for about $800 a month. The lease does not contain any agreement that plaintiff would perform property management duties and plaintiff never agreed to provide services in exchange for paying reduced rent.

Ownership of the triplex passed to Connie, LLC, in 2020. The LLC's manager was Heidi Starnes Izzi and her brother Todd Starnes was a member.[2] Plaintiff, by then 70 years old, was paying $1,025 a month for rent.

The LLC hired a property management company, defendant Old Newport Realty, doing business as Genuine Property Management (Genuine). The compensation for Genuine's services was six percent of rent payments received.

---

[1] All undesignated statutory references are to the Penal Code.

[2] Because of the commonality in their names, we will refer to these individuals by their first names for clarity.

2

Heidi and Todd wrongly told a director of Genuine that plaintiff had been a "resident manager for [the] property" and that was why his rent was so much lower than the other triplex tenants. Heidi and Todd instructed the director to terminate plaintiff's role as property manager and "raise the rent to market."

On December 23, 2020, the director repeated the LLC's mischaracterization of plaintiff's tenancy in an e-mail to an attorney: "We acquired a new property. One out of the triplex has a[n] 'onsite manager' but no documentation, no employee, employer. Just the owner who passed away gave him a discount on rent and is paying much less. There is no lease at all. Will a 60 day notice suffice to get him out so the owner can renovate and take the property back?"

The director and attorney exchanged several more e-mails that afternoon. In one e-mail, the attorney asked: "Is the property subject to AB1482?" The director responded: "No it is not." "AB1482" refers to the Tenant Protection Act of 2019 (Assem. Bill No. 1482 (2019–2020 Reg. Sess.), which limits the maximum increase of a gross rental rate to 10 percent. (Civ. Code, § 1947.12, subd. (a)(1).) Based on the director's inaccurate representation, the attorney believed the Act did not protect plaintiff's rent rate.

The following week, the attorney provided a strategy: "You can take a . . . position that the understanding was that [plaintiff's] discounted rent was only because he was an employee. You can terminate his employment then raise the rent to market rent. Since there is no written agreement, the risk is that you can't prove the discounted rent was solely due to his employment, then the increase would be improper."

Three weeks later, Genuine sent plaintiff a letter advising that his services were no longer needed and that his rent would be increased to $2,450 a month. Plaintiff responded that he understood and, without communicating any objection, subsequently made the increased rent payments for 11 months. Prior to the increase, the director obtained a copy of plaintiff's 1995 lease and nothing in the record indicates the director updated the attorney with the information. Plaintiff's payments totaled $15,675, of which Genuine received 6 percent and the LLC received 94 percent.

## II.

### TRIAL AND THE DIRECTED VERDICT

Plaintiff's counsel filed the underlying lawsuit against the LLC and Genuine (collectively, defendants). The operative complaint alleged three causes of action against both defendants: (1) breach of contract; (2) a common count for money had and received; and (3) an intentional tort cause of action styled as "Receiving Stolen Property" (the section 496 claim).

At a jury trial, Genuine's director (through deposition testimony) and plaintiff testified to the facts discussed above. The attorney who the director had consulted confirmed that her legal advice had rested on incorrect information provided by Genuine and the LLC.[3]

Genuine's principal testified that it ultimately sent plaintiff $17,112, representing the invalidly increased rent payments that had been paid, as well as seven percent interest.

---

[3] The parties agree that the 10 percent rent increase ceiling applied, based on the Act. (Civ. Code, § 1947.12, subd. (a)(1).) Given the nature of our review, we take the parties' agreement at face value and do not scrutinize it.

4

After the close of evidence, defendants moved for a directed verdict. (See Code Civ. Proc., § 630.) Defendants contended that "the only evidence is that there was a mistake by Genuine Property Management after it even sought the guidance from its counsel, thus there was no stolen property." Plaintiff argued there was sufficient evidence to show that money was stolen by false pretense or extortion.

The trial court granted directed verdicts against all causes of action except plaintiff's breach of contract claim against the LLC. The parties waived a jury trial on the surviving claim and the court entered a nominal judgment of $500 in attorney fees for plaintiff. On appeal, plaintiff challenges the ruling only on his section 496 claim.

## DISCUSSION

Plaintiff contends a directed verdict against his section 496 claim was unwarranted because the evidence supported liability. "[B]ecause granting [a directed verdict] motion removes the matter from the jury, 'courts traditionally have taken a very restrictive view of the circumstances under which' a directed verdict is proper.'" (*Watts, supra,* 106 Cal.App.5th at p. 258.) As the reviewing court, we view the evidence in the light most favorable to plaintiff—drawing inferences and resolving evidentiary conflicts in plaintiff's favor, and disregarding conflicting evidence. (*Ibid.*) The granting of the motion should be reversed if substantial evidence supports his trial position. (*Ibid.*)

Section 496, subdivision (a) (section 496(a)), provides: "Every person who . . . receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained . . . shall be punished" pursuant to the statute. "[P]roperty" under section 496(a) includes money. (*Siry, supra*, 13 Cal.5th at

5

p. 361.) The statute's subdivision (c) authorizes treble damages, "costs of suit, and reasonable attorney's fees" for "[a]ny person who has been injured by a violation of subdivision (a)." (§ 496, subd. (c).)[4]

Theft, in turn, is defined in section 484, subdivision (a), as follows: "Every person who . . . shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property . . . is guilty of theft."

Obtaining money through false pretenses with criminal intent constitutes a violation of section 496(a). (*Siry, supra*, 13 Cal.5th at pp. 361–362.) In *Siry*, the California Supreme Court held that section 496 applied to a civil default judgment involving the "fraudulent diversion of a partnership's cash distributions." (*Id.* at p. 339.)

*Siry* "endorse[d] the analysis of *Bell*[ v. Feibush (2013) 212 Cal.App.4th 1041] and *Switzer*[ v. Wood (2019) 35 Cal.App.5th 116]." (*Siry, supra*, 13 Cal.5th at p. 361.) *Bell* held that "[s]ection 484 thus defines theft to include theft by false pretense" (*Bell,* at p. 1048)—in that case, a loan obtained via "a scam" (*id.* at p. 1044). *Switzer* extended *Bell* to the fraudulent withholding of partnership income, noting that "[t]he wording of [section 496] makes no exception for cases involving preexisting business relationships." (*Switzer,* at p. 129.) *Siry* conceded that section 496 would not reach false statements made "'innocently or inadvertently'" but also noted "the requisite criminal intent" can be established with facts showing "careful planning and deliberation." (*Siry,* at p. 362.)

---

[4] Nothing in the record shows Genuine's $17,112 payment to plaintiff included treble damages, costs, and attorney fees.

We conclude sufficient evidence would allow a jury to find that defendants' receipt of plaintiff's illegally increased rent payments amounted to receiving stolen property through false pretenses. (*Siry, supra*, 13 Cal.5th at p. 361.) Plaintiff offered evidence that defendants illegally raised his rent through "careful planning and deliberation." (*Id*. at p. 362.) Heidi and Todd wrongly told Genuine that plaintiff was the triplex's property manager. Genuine wrongly told counsel that plaintiff was the property manager and that he had no written lease, despite obtaining a copy of plaintiff's 1995 lease prior to the rent increase. A jury could have reasonably inferred that Genuine's director's misrepresentation showed an intention to fraudulently induce plaintiff to hand over money through a knowingly illegal rent hike. A reasonable jury could further infer that the strategy served the LLC's plan to end-run around plaintiff's leasehold rights.

Defendants cannot save the directed verdict by recounting their evidence of a good faith mistake. (See *Siry, supra*, 13 Cal.5th at p. 361; see *id.* at p. 368 (conc. opn. of Groban, J.)[good faith mistake ""negates the felonious intent necessary for conviction of theft""].) They note the 2019 leases for the other triplex tenants both specified that notices intended for the predecessor landlord were to be sent to plaintiff, and that one of the leases was signed by plaintiff as "Property Manager." Defendants also cite to Heidi's testimony that, at an estate planning meeting for the triplex's predecessor owner, it was understood that plaintiff's "rent was lower because he was managing the property."

But the likelihood of plaintiff's success at trial does not govern our review of the directed verdict. Instead, we view the facts in the light most favorable to plaintiff and disregard conflicting evidence. (*Watts, supra*, 106 Cal.App.5th at p. 258.) Doing so, we conclude there is sufficient evidence

7

to support plaintiff's position on section 496(a) liability. We note that *Siry* involved a fraudulent diversion of money in the context of a commercial partnership agreement (*Siry, supra*, 13 Cal.5th at p. 339)—facts more remote to traditional notions of theft and receipt of stolen property than the theory plaintiff asserts here. If *Siry*'s allegations were sufficient to trigger section 496's civil remedies, then the facts here trigger the statute all the more.

Defendants' additionally argue that plaintiff's section 496 claim should fail as a matter of law because "[t]here was no withholding" by either defendant—evidenced by the fact that plaintiff "never asked for" his money back prior to litigation—and, separately, that there was no evidence of "concealment of any kind." But section 496's plain language prohibits receiving stolen property in the first place.[5]

---

[5] In support of their position, defendants cite to case law at odds with *Siry*. For example, defendants quote extensively from *Lacagnina v. Comprehend Systems, Inc.* (2018) 25 Cal.App.5th 955, 970–971, *Grouse River Outfitters Ltd. v. NetSuite, Inc.* (N.D.Cal., Oct. 12, 2016, No. 16-cv-02954-LB) 2016 WL 5930273, and *Agape Family Worship Ctr., Inc. v. Gridiron* (C.D.Cal., May 30, 2018, No. 5:15-cv-1465-ODW-SP) 2018 WL 2540274. The high court mentioned the analyses of all three decisions—none approvingly. *Lacagnina*'s relatively narrow construction of section 496 was discussed (*Siry, supra*, 13 Cal.5th at pp. 352–354), before being excluded from the high court's endorsement of Court of Appeal opinions (*id.* at p. 361). As to *Grouse* and *Agape*, the high court noted that "subsequent federal decisions have criticized, and refused to follow" both decisions. (*Siry, supra*, 13 Cal.5th at p. 351, fn. 12.)

8

## DISPOSITION

The judgment is reversed as to the trial court's ruling on plaintiff's section 496 claim only. The matter is remanded for further proceedings consistent with this opinion. Plaintiff is entitled to his costs in this appeal.


SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.

Filed on 8/21/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RANDY R. JOHNSON,<br><br>　　Plaintiff and Appellant,<br><br>　　　v.<br><br>CONNIE, LLC, et al.,<br><br>　　Defendants and Respondents. | G064240<br><br>(Super. Ct. No. 30-2022-01248762)<br><br>ORDER GRANTING REQUESTS FOR PUBLICATION |

　　　　　The Legal Aid Foundation of Los Angeles, the Western Center on Law and Poverty, BASTA, Inc., and the Public Good Law Center have requested that our opinion filed July 22, 2025, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.l105(c). The request is GRANTED.

　　　　　The opinion is ordered published in the Official Reports.

　　　　　　　　　　　　　　　　　　　SCOTT, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.